WILL OF DENNETT.

*April 5—June 18, 1928.*

278

For the appellants there were briefs by *Collins & Collins* of Sheboygan, and oral argument by *W. B. Collins.*

For the respondents there was a brief by *Benjamin Poss* of Milwaukee and *Bowler & Bowler* of Sheboygan, and oral argument by *G. W. Buchen* of Sheboygan.

ESCHWEILER, J.   The attack by appellants here upon the result reached by the trial court may be summarized as presenting questions concerning the legal effect of and rights given by and under the three contracts of December, 1913, on the theory that fraud was perpetrated by Mr. Hill, an executor, in presenting an incorrect copy of his contract and by omitting any reference to the Henry contract in the claim filed by the bank; in rulings on evidence; and lastly, that there was no final order for payment under sec. 313.17, Stats.

The contract between Dennett and Moeser of December, 1913, identical in form with the Hill and Henry contracts, was as follows:

"Whereas, O. E. Moeser has purchased from the Wisconsin Chair Company, Port Washington, Wisconsin, one hundred shares of its Series C preferred stock, and

"Whereas, the conditions upon which all the Wisconsin Chair Company's preferred stock has been issued, provide that it may retire any one issue upon any dividend period:

"This agreement, made and entered into this 31st day of December, 1913, by and between O. E. Moeser and F. A. Dennett,

"Witnesseth: That at any time after three years the said O. E. Moeser shall request that said stock be redeemed, said F. A. Dennett will either effect such redemption by the Wisconsin Chair Company or purchase such stock at par, all dividends having been paid.     F. A. DENNETT."

It is claimed by appellants that inasmuch as there was no showing made of any prior demand and refusal or failure by the Wisconsin Chair Company to redeem or purchase the respective shares of stock, that there is wanting any legal foundation for a claim against the estate of Fred A. Dennett on the theory that neither he, if alive, nor his estate, could be in default under the contract until there was shown that the Chair Company itself was in default. The contract, however, by its very plain and explicit terms negatives any such theory. Mr. Dennett agreed that he would either arrange with the Chair Company for a redemption of the stock or he would purchase it himself. He alone was to be the acting party to secure such redemption by the Chair Company, and if he could not or did not procure such redemption, then he was the one to purchase. The contract itself placed no duty on any one other than Dennett to deal with the Chair Company in this matter.

It is also urged that these contracts lost their vitality by reason of the long period elapsing between their execution in December, 1913, effective, however, in January, 1914, and the filing of the claim in September, 1920, against the estate (it being conceded that no demand thereunder was made in Dennett's lifetime).

Though rights under such repurchase contracts may well be lost by delay in acting upon them within a time less than

the period prescribed by the statutes of limitation (*Stark-weather v. Gleason*, 221 Mass. 552, 553, 109 N. E. 635), nevertheless such delay must be such that it is an unreasonable one, and this depends upon the facts shown surrounding the particular transaction involved in any case. Because of the express provision of the contract itself forbidding any right to demand redemption or purchase within the three years next after its execution, such three years must be disregarded. Here there is ample support for the express finding by the trial court that the delay was not unreasonable. The close business relationship between the parties to these contracts; the control over and the interest Dennett had in the Chair Company; the financial condition of that company during this time; its large profits in 1918, 1919, and first part of 1920, and many other facts disclosed in the record but not now necessary to be detailed, support the conclusion reached below, which cannot and ought not to be now disturbed.

It is further contended that any right under the contract to tender back for redemption the stock referred to in the respective contracts must be limited to the identical certificates issued at the time the contracts were entered into, and cannot be extended to other certificates although of the same number of shares. We deem it unnecessary to here consider or dispose of any question whether a literal and proper construction of the contract would so limit the right thereunder, in view of the fact that it clearly appears that no damage to the estate has resulted thereby, and where it is shown that the substitution of other certificates for those of the original one hundred shares purchased by Moeser came about by reason of the subsequent transaction in June, 1914, between Moeser and Dennett, and at the instance and request of Dennett, and under such circumstances that Dennett himself evidently would not have asserted such a possi-

ble objection if demand had been made in his lifetime, and could not, on the equitable doctrines of estoppel, have been heard to so assert such contention if, having opportunity so to do, he had asserted such. Manifestly the estoppel against him runs also against his estate.

It is further claimed that these contracts were of such a special form or nature as guarantees that they were not assignable. Viewing them, however, as we have above, as direct obligations of Dennett, we can find no reasonable ground upon which such contention can be supported.

Appellants also contend that the Port Washington State Bank, in whose name the claim was filed for the two hundred shares covered by the three contracts, was not the real party in interest under our statutes, sec. 260.13, as to any or all of said contracts, and had no right, therefore, to file a claim for the several amounts or have them allowed and paid to it. The bank, however, might properly, either under an oral or written assignment, take sufficient title to the rights secured by the contracts to become an interested party for the enforcement of such claims and an accounting for the same thereafter to the persons beneficially interested. *State ex rel. Ætna Ins. Co. v. Fowler,* decided herewith (*post,* p. 451, 220 N. W. 534), and cases there cited. Manifestly none of the three persons, Hill, Henry, or Moeser, in the face of the written assignments by Moeser and Henry and the situation of Mr. Hill as an individual and officer of the bank, could ever be heard to reassert claims upon such contracts in disregard of the claim so asserted by the bank with their knowledge and the payments made to the bank and accounted for by it to or for them.

Complaint is made on the ground that Moeser and others were permitted to testify to transactions with Mr. Dennett. Such suggested errors were not detailed by the appellants until discussed in their reply brief. The printed case gives

a very unsatisfactory presentation of the record that has to be examined in considering this particular assignment of error. The record, however, discloses on this point that the door for the testimony complained of was, as the trial court correctly ruled, opened by the examination on the petitioners' behalf of these witnesses as to the very subject matter with which the evidence complained of is concerned. Even were there error as to some of the details of such evidence it was not prejudicial error, for there is ample in the record, outside of that, to support the conclusion reached below and here.

The attack made by appellants' counsel on the theory that there was a forgery and crime committed by Mr. Hill, the executor, friend, and business associate of Mr. Dennett, in changing, in the copy of the Hill contract filed with the claim, the amount of shares to one hundred instead of the fifty as there found, and the fifty in the Henry contract, we deem an unwarranted and uncalled-for contention.

No concealment was made of the fact that there were three instead of two original contracts. The three contracts were exhibited to the executors and attorneys of the estate before the claims were filed. Mr. Hill at the time of the filing was the owner of the Henry fifty shares as well as his own by virtue of his open and above-board purchase from Henry in February, 1920, as to the validity of which purchase there is not a shadow of suspicion shown by any of the evidence. He therefore was in fact the owner of one hundred and not merely fifty shares at the time the claim was filed under these contracts. No harm or damage was done the estate by including the one hundred shares as being the amount of the Hill contract instead of separating it into the two contracts. The original three contracts were preserved intact and presented at an early stage of the proceedings and show that the face of each of the original contracts upon which the claims were based was in no manner altered.

There was no place for the rule applicable where there is a material alteration of an original document as discussed in the cases cited by appellants of *Low v. Merrill,* 1 Pin. 340, 343, where the date of a promissory note was changed; *Kilkelly v. Martin,* 34 Wis. 525, 531, a change in rate of interest not consented to; *Hecht v. Shenners,* 126 Wis. 27, 30, 105 N. W. 309, a material change as to notice of option in a note, all prior to the change in the law as to holders in due course; and *Farmers & M. State Bank v. Huss,* 182 Wis. 658, 660, 197 N. W. 177, where action was brought upon such altered instrument, knowing of and relying upon the alteration; to which may be added *Mertz v. Fleming,* 185 Wis. 58, 62, 200 N. W. 655; same case again in 191 Wis. 305, 210 N. W. 716, passing upon the statute as to changes in negotiable instruments, none of which cases are here material. We deem it unnecessary to dignify such a contention by any further discussion.

Consideration of this record discloses a situation where the deceased, relying upon his friends and associates, asked for and received aid from them in his business transactions when he evidently needed such aid. He evidently had faith in the Chair Company with which he was so intimately connected and in good faith guaranteed to these three friends who purchased the stock in that which was so largely the Dennett Company, and we find nothing in the record to impeach the validity of these claims or the propriety of their allowance.

No formal order under sec. 313.17, Stats., expressly making a specific direction or judgment for the payment of this or other claims, appears in the record as now presented to us, and for want of such it is argued that the account showing such payment must therefore be disallowed. There is the uncontradicted testimony that after the county judge made and filed his decision on claims, including a recital of the allowance of this one, one of the attorneys for the estate

proceeded to enter judgment, and we must presume, there being no showing to the contrary, that the necessary formalities were completed. The petitioners, moreover, are in no position to assert here for the first time such an objection, which if properly raised below could have easily been cured, no question of limitations being here presented, as in *Estate of Lehmann,* 183 Wis. 21, 24, 25, 197 N. W. 350.

*By the Court.*—Judgment affirmed.