DEPNER, Respondent, vs. THOMPSON and another, Appellants.

*October 17—November 20, 1945.*

634

636

For the appellants there was a brief by *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner* and *Philip Lehner.*

*Tom Donoghue* of Oconto, for the respondent.

ROSENBERRY, C. J.    The first contention of the defendants is that they were not jointly liable for the damages for which recovery was had and that separate inquiry should have been made as to the liability of each of the defendants.    As the trial court said, the pleadings in this case charge that Thompson and Tait jointly assaulted the plaintiff.    The defendants do

not answer separately but interpose one answer that contained a denial of any malicious or wrongful assault, and allege that the plaintiff was in such an intoxicated condition that the defendants cared for him and did not assault him with any idea of wrongdoing. The defendants did not request in writing or orally at the time of the trial any separation in the questions submitted in the verdict, and the case was tried throughout with the plaintiff claiming that both defendants wrongfully assaulted him, and the defendants jointly and together defended on that theory and each by his testimony justified the conduct of the other. It is true that there was difficulty between the plaintiff and the defendants earlier in the evening, but the complaint contains no allegation with respect to anything that happened before the early morning of December 20th, shortly after midnight; and the second question of the verdict expressly limits the damages to the assault committed on the 20th day of December, 1943. For the reasons stated by the trial court, it is considered that the effort of the defendants to now separate the action into separate actions must fail. The evidence sustains a joint assault by these two officers of the law, charged with the duty of maintaining the peace and quiet of the city of Oconto Falls. Just why they should think that it was necessary in the course of maintaining the peace, for two young men to beat up an old man whom they claim was very intoxicated in order to maintain the peace, it is difficult to see.

The claim that the compensatory damages are excessive cannot be sustained. While the plaintiff sustained no permanent injuries, the jury found an unprovoked assault by the defendants upon a man unable to defend himself which subjected him not only to physical injuries but to humiliation and ridicule.

In his opinion on motions after trial, the court said:

"The question of damages caused me concern immediately after the jury rendered its verdict and I have, in my own mind, considered it many, many times since the trial. . . .

I think when they [the jury] first looked at these defendants and looked at this plaintiff and heard the opening statements that they were immediately shocked. Each defendant is a most excellent physical specimen. They are both young men, inordinately physically equipped for any kind of physical combat. Either one of them would have been more than a match for the plaintiff in any kind of altercation. . . . The defendant, Tait, particularly by his attitude even at the trial certainly could not have impressed the jury with any idea of his attempt to be fair to this plaintiff at the time of the alleged altercation and, in his justification of what he did, very cockily asserted his rights and wanted the jury to believe that he was justified in everything he did. . . .

"The testimony of the plaintiff, which could have been believed, and evidently was believed by the jury, is that after he was evicted from the car that both defendants, Tait and Thompson, kicked him and that, at that time, he was already bruised about his face, and, as further evidence of the fact that he was quite maliciously assaulted, there was injury to his hands, occasioned by, as the plaintiff claims, his attempt to put his hands in front of his face to save him from further injury.

"The testimony shows that the plaintiff did not return to his work as a street worker for the city of Oconto Falls for a period of three days; that he saw a doctor on only one occasion; that it was some weeks before all the evidence of his injury to his face had been removed. The doctor's testimony, based upon an examination made the day after, or the following morning, discloses injury to the top of plaintiff's head, saying that there were nodules or bumps on the top of plaintiff's head; that there was a general puffiness of the face; that both ears were injured and that the arch of the nose was injured and the eyes both blackened and the cheekbone hurt. The plaintiff's testimony as to kicking is corroborated by the doctor when the doctor testifies that he found evidence of injury to the left buttocks and evidence of injury to the right thigh.

"While plaintiff was unable to return to his work for a period of three days, the testimony shows undisputedly that he suffered no wage loss because the city of Oconto Falls by some kind of peculiar local mechanism and, as the jury un-

doubtedly found was probably the influence of both Tait, who was then mayor, and Thompson, who was assistant chief of police, paid the plaintiff's wages during the time that he was not at work."

The only really serious question raised by the defendants on this appeal is whether the court committed error in admitting testimony as to the financial worth of the defendants. Counsel for the plaintiff on cross-examination was permitted to inquire of each of the defendants as to their financial worth. On redirect examination these matters were gone into fully by counsel for the defendant. In the course of the cross-examination, counsel for the plaintiff asked defendant Thompson, the following question:

"*Q.* How many trucks do you use in your business?
"The Court: Just how is that competent, Mr. Donoghue? Let's stay on the reservation in this case. Objection sustained.
"Mr. Donoghue: The plaintiff has the right to show the defendant's wealth in a matter of this sort.
"The Court: Is that the purpose?
"Mr. Donoghue: Yes.
"The Court: All right, go ahead."

It is evident that the court was in error in using the words "Objection sustained," no objection having been made. A careful search of the record discloses no objection to the testimony of defendant Thompson or defendant Tait upon this subject. No objection having been made in the court below, the objection cannot be raised here for the first time. 1 Wigmore, Evidence, p. 330, sec. 18 (3); *Mowry v. Mosher* (1862), 16 Wis. *46; *Tomlinson v. Wallace* (1862), 16 Wis. *224, note and cases cited; *Gardner v. Young's Estate* (1916), 163 Wis. 241, 246, 157 N. W. 787; *Will of Dennett* (1928), 196 Wis. 275, 288, 220 N. W. 538.

In this case the defendants' counsel may very well have considered it to the advantage of the defendants to have the matter of reputed wealth gone into. It appears from the evi-

dence that they were men of considerable importance in the community, doing an apparently large and profitable business but the owners of comparatively small equities. According to the evidence, Thompson had assets of $22,500 and liabilities $19,500, or a net worth of approximately $3,000. Tait testified that his assets amounted to $13,100 and his liabilities $7,000, or a net worth of approximately $6,000.

The finding of the jury as to the assault being sustained by the evidence, the compensatory damages, while large, are not excessive, and no objection having been made at the trial as to the introduction of the reputed wealth of the parties, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.