Helen B. Starkweather *vs.* Frederick J. Gleason.
William G. Starkweather *vs.* Same.

Norfolk.   March 25, 1915. — May 22, 1915.

Present: Rugg, C. J., Loring, Braley, Pierce, & Carroll, JJ.

*Contract,* Construction, What constitutes.   *Words,* "Any time."

Where a person who was the president and general superintendent of a cor-
poration, by whose advice certain persons had purchased preferred and com-
mon shares of the capital stock of the corporation, after such purchasers had
called his attention to a decline in the market value of the stock, wrote to
them, "any time you feel real worried, why come out and you can get your
money to the value you paid for the stock from me," whereupon the pur-
chasers replied, "For the present . . . we will not take advantage of your
willingness to protect us, but will wait to see if the value of the preferred
drops any further, for if this continues we would not care to retain our small
holdings," and where, after an interval of five months during which a receiver
for the property of the corporation had been appointed, the purchasers noti-
fied the promisor that they accepted his offer and were ready to transfer the
shares of stock to him, and he refused to purchase the shares, in an action
against him upon his alleged agreement, it was *held,* that the words "any
time" contained in the defendant's offer, under the circumstances shown by
the undisputed facts, must be construed to mean within a reasonable time,
and that the attempted acceptance of his offer after an interval of five
months during which the plaintiffs had knowledge of the fluctuating financial
condition of the corporation and the decline in the market value of its shares,
was too late as matter of law.

Two actions of contract for the breach of an alleged agree-
ment in writing of the defendant to purchase from the plaintiffs
certain shares of the preferred and common stock of the Walpole
Tire and Rubber Company.   Writs dated April 17, 1914.

In the Superior Court the cases were tried together before
*McLaughlin,* J.   The alleged contract was contained in a corre-
spondence between the parties, the material portions of which
are quoted in the opinion, where also the other material facts are
stated.

At the close of the plaintiffs' evidence, the judge ruled that upon
all the evidence the plaintiffs were not entitled to recover, and
ordered a verdict for the defendant in each case.   Thereupon the
judge reported the cases for determination by this court.   If the

ruling and the ordering of the verdicts were wrong, judgment was to be entered for the plaintiff in the first case in the sum of $450 and for the plaintiff in the second case in the sum of $900; otherwise, judgments were to be entered for the defendant on the verdicts.

*L. A. Brown,* for the plaintiffs.

*C. G. Metzler,* (*J. B. Welch* with him,) for the defendant.

BRALEY, J.  The correspondence between the parties would have warranted the jury in finding that the plaintiffs invested money in the preferred and common shares of the Walpole Tire and Rubber Company in reliance on the advice and judgment of the defendant, its vice-president and general superintendent. After they had called his attention to the decline in market value of the stock, he wrote them from the company's office, on March 26, 1913, "any time you feel real worried, why come out and you can get your money to the value you paid for the stock from me." To which they replied, on March 27, 1913, "For the present . . . we will not take advantage of your willingness to protect us, but will wait to see if the value of the preferred drops any further, for if this continues, we would not care to retain our small holdings."

If this had been an unconditional acceptance the transaction would have been closed and the plaintiffs, upon delivery of the certificates, properly indorsed, would have been entitled to the amount invested. It was not, however, until August 26, 1913, after a receiver for the company had been appointed, that they accepted the offer and notified the defendant of their readiness to deliver the stock, but he refused performance.

While the offer to buy was evidently for the purpose of protecting them from loss on the investment, and was not intended by the defendant as a purely business transaction, the words, "any time," do not cover an unlimited period to be measured by the alternating hopes or fears of the plaintiffs, but must be construed as limited to a reasonable time. *Holland* v. *Cheshire Railroad,* 151 Mass. 231, 236. And, the facts not being in dispute, this was a question of law for the court. *Holbrook* v. *Burt,* 22 Pick. 546, 555. The plaintiffs, with knowledge of the fluctuating financial condition of the company, and the corresponding decline in the market price of the stock, having remained inactive

for five months, we are of opinion that under these circumstances the presiding judge correctly ruled that the option had expired. *Park* v. *Whitney,* 148 Mass. 278.

We find nothing in the remaining contents of these letters that calls for discussion.

By the terms of the report, judgment on the verdict is to be entered for the defendant.

*So ordered.*