# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

HARRY SUSSER *vs.* CAMBRIA CHOCOLATE COMPANY & others.

Suffolk.    November 1, 2, 1937. — March 8, 1938.

Present: FIELD, LUMMUS, QUA, & DOLAN, JJ.

*Corporation,* Sale of assets.    *Mortgage,* Of personal property: validity. *Sale,* In bulk.

The provisions of G. L. (Ter. Ed.) c. 156, § 42, are not applicable to a mortgage by a corporation in which assets of a substantial value and the good will are not included.

BILL IN EQUITY, filed in the Superior Court on April 26, 1934.

The plaintiff appealed from a final decree dismissing the bill, entered after a hearing by order of *F. T. Hammond,* J.

*S. Susser,* for the plaintiff.

*H. W. Cole,* (*J. H. Ramsey* with him,) for the defendants.

DOLAN, J.    This is a suit in equity which was brought in the Superior Court, by a minority stockholder of the defendant Cambria Chocolate Company, a Massachusetts business corporation, to set aside a mortgage of its machinery, fixtures and equipment given to the defendant Nieschlag & Co., Inc.    The judge filed a statement of

findings, entered a decree dismissing the bill of complaint, and the plaintiff appealed. The evidence is not reported.

In May, 1932, the Cambria company was engaged in the business of manufacturing chocolate coating. It had been purchasing cocoa beans, which made up nine tenths of the raw materials used in manufacturing its products, from the Nieschlag company. At that time the assets of the Cambria company consisted of land and a factory building on which a first mortgage was held by a stranger to this proceeding; machinery, fixtures, and equipment; stock in process, $1,108.23; finished goods, $22,717; raw materials, $2,703.06; packing materials, $3,254.93; cash, $1,284.90; and accounts receivable, $37,192.57, of which $35,765.47 was due from one customer. Its business had been adversely affected by the depression and it had almost no working capital. It owed the Nieschlag company about $11,000 and the latter was unwilling to extend further credit unless secured in some manner. The Cambria company was unable to obtain credit from any other source. On May 6, 1932, the Cambria company, with the approval of its directors, executed a written guaranty to the Nieschlag company, agreeing to make prompt payment of $25,000 to that company "and for a term of three years" for all cocoa beans previously sold or thereafter sold to it by that company. The Cambria company gave to the Nieschlag company a note for $25,000, payable in or within three years with interest at six per cent, and to secure its payment executed the mortgage above referred to and a trust agreement and a second mortgage of the real estate. The judge found that these transactions were never authorized by "a vote of 'two thirds of each class of stock outstanding and entitled to vote' at a meeting of the stockholders of the Cambria Company." (See G. L. [Ter. Ed.] c. 156, § 42.)

In February, 1933, the indebtedness of the Cambria company to the Nieschlag company had increased to $23,359.76 and the latter company refused to make further shipments of materials; and instructed the trustee under the trust agreement to sell all merchandise held by him as such trustee for its account, as was its right under the terms

of the trust agreement.  At that time the Cambria company substantially ceased doing business.  On January 13, 1934, the first mortgage on the real estate, on which there was then due $67,500, was foreclosed by sale, and the property bid in for about $50,000.  On the same day the Nieschlag company foreclosed its personal property mortgage by sale, and the property was bid in for it for $15,000.  The judge found that the value of the personal property thus bid in did not exceed $15,000, either at the time the mortgage was given or at the time of its foreclosure.  On the same day the Nieschlag company resold the personal property to the defendant trustees of the "Daggett Trust" upon a conditional sale at an agreed price which has since been paid in full.  The sale was made in good faith and "without a preconceived plan."  The judge stated: "Assuming that the mortgages and the [trust] agreement . . . amounted to a 'sale' within the meaning of the statute, the raw materials on hand, the packing materials, the cash on hand and the accounts receivable were not transferred to the Nieschlag Company.  These were assets of a substantial value.  Upon the accounts receivable alone about $14,000 has been collected since May 6, 1932.  There was no conveyance of the 'good will' of the Cambria Company.  I find and rule that the Cambria Company did not make a 'sale . . . of all its property and assets including its good will'; and that the personal property mortgage given by it to the Nieschlag Company was properly authorized and valid."

G. L. (Ter. Ed.) c. 156, § 42, which is the statute referred to by the judge and relied upon by the plaintiff, reads as follows: "Every corporation may, at a meeting duly called for the purpose, by vote of two thirds of each class of stock outstanding and entitled to vote, or by a larger vote if the agreement of association or act of incorporation so requires, change its corporate name, the nature of its business, the classes of its capital stock subsequently to be issued and their preferences and voting power, or make any other lawful amendment or alteration in its agreement of association or articles of organization, or in the corresponding

provisions of its act of incorporation, or authorize the sale, lease or exchange of all its property and assets, including its good will, upon such terms and conditions as it deems expedient."

The plaintiff does not contend that the directors of the Cambria company could not validly authorize a mortgage of less than all its property and assets, but asserts that the conclusion of the trial judge, that "the personal property mortgage given by it to the Nieschlag Company was properly authorized and valid," is erroneous. The plaintiff has relied in argument to a large extent on the cases of *Commerce Trust Co. of Baltimore* v. *Chandler*, 284 Fed. 737; 295 Fed. 241; certiorari denied 265 U. S. 589, and *McDonald* v. *First National Bank of Attleboro*, 70 Fed. (2d) 69, where it was held that "sale" in § 42 includes "mortgage." While these decisions are not controlling we accord them respect. They are predicated on findings that the mortgages under consideration were of all the property and assets of the corporation including good will or tantamount thereto. In *Commerce Trust Co. of Baltimore* v. *Chandler, supra,* the mortgage considered was of all the corporate property and assets including the good will and was given to secure a demand note. The court held that the mortgage was in its nature as effective to put the corporation out of business as an out-and-out sale, lease or exchange of its property. The court was, however, careful to say that it intimated no opinion whether directors of a Massachusetts business corporation may without a vote of two thirds of its stockholders mortgage less than all the property of the corporation. In *McDonald* v. *First National Bank of Attleboro*, 70 Fed. (2d) 69, the court held that where the property conveyed is of such important character that the mortgagor could not possibly carry on business without it, and the good will is included, the conveyance or mortgage is within the provisions of § 42, unless the omitted property has substantial value and importance when considered in relation to the property conveyed or mortgaged. In the cases just cited it thus appears that the mortgage in each case was one of

all the property and assets including good will or one where the omitted property was not of substantial value, and good will passed as a result. They appear to us to be distinguishable in the facts from the case before us. Here the judge has found that the transactions involved did not constitute a sale of all the property and assets of the Cambria company, including good will, and that the assets of the corporation which were not included within the terms of the mortgages and trust agreement were of substantial value.

The plaintiff concedes that he "has no quarrel concerning the finding of facts made by the court below." The facts found show the value of the property mortgaged or assigned in trust was $38,825.23, and that of the omitted property, taking the accounts receivable at the amount subsequently collected thereon ($14,000), was $21,242.89. If the accounts receivable be taken at their book value at the time of the transactions involved, the omitted property was of the value of $44,435.46. We think that the judge was right in his conclusion that there was no violation of G. L. (Ter. Ed.) c. 156, § 42, even if that statute be construed as it was in the Federal cases cited.

*Decree affirmed with costs.*