JOSEPH BLECK *vs.* EAST BOSTON COMPANY & others.

Suffolk.    March 8, 1938. — January 10, 1939.

Present: FIELD, C.J., LUMMUS, DOLAN, & COX, JJ.

*Corporation,* Distribution of assets. *Equity Jurisdiction,* To compel distribution of corporate assets. *Equity Pleading and Practice,* Bill, Decree, Demurrer. *Evidence,* Judicial notice.

Under G. L. (Ter. Ed.) c. 233, § 74, judicial notice will be taken of amendments to acts of incorporation as well as of the original acts.

A general demurrer to the whole bill in a suit in equity should be overruled if any case for relief is stated by the bill.

The general equity jurisdiction does not extend to ordering distribution of the assets of a corporation among its stockholders on the ground that there is no apparent need for its continued existence.

In a minority stockholder's suit in equity, relief by rescission of certain allegedly improper transactions between the corporation and others should not be granted under the prayer for general relief where the sole specific prayer was for distribution to the stockholders of property derived by the corporation from the transactions and so was based on their validity.

BILL IN EQUITY, filed in the Superior Court on April 23, 1937.

Demurrers were sustained by *Williams,* J., and a final decree dismissing the bill was entered by order of *Walsh,* J. The plaintiff appealed.

*W. P. Everts,* for the plaintiff.

*A. S. Lawrence,* (*E. R. Anderson* with him,) for the defendants.

LUMMUS, J.    This is a bill by a minority stockholder of East Boston Company. It does not set forth the relevant amendments to the original charter. The briefs refer us to some of them but leave us to search for others. G. L. (Ter. Ed.) c. 233, § 74, providing that acts of incorporation are public acts, which courts will notice without allegation or proof (*American Steel & Wire Co.* v. *Bearse,* 194 Mass. 596, 600, 601; *Selectmen of Clinton* v. *Worcester Consolidated Street Railway,* 199 Mass. 279, 283), applies equally to

amendments to such acts.  The original act of incorporation, St. 1833, c. 152, in § 2 authorized the corporation to hold real estate on Noddle's Island (now called East Boston) "with such personal property as may be necessary for the proper conducting of the affairs of said corporation," provided the whole real and personal estate of the corporation shall not exceed in value $500,000.  The corporation was empowered "to sell and convey, lease, mortgage, or otherwise dispose of said corporate property, or any part thereof, and to manage and improve the same at its will and pleasure, with authority to construct dams, docks, wharves and buildings, and to lay out streets and passage ways within the limits of said island, as it shall deem expedient."  St. 1840, c. 93, and St. 1909, c. 520, do not seem significant. By St. 1928, c. 116, this provision was made: "In addition to its corporate powers and privileges, as now existing under its charter and any amendments thereto, said corporation shall have and exercise all the powers and privileges and be subject to all the duties and liabilities of domestic business corporations as provided in" G. L. cc. 155, 156.  One of those powers is to convey land.  G. L. (Ter. Ed.) c. 155, § 8.  Another is to mortgage land.  G. L. (Ter. Ed.) c. 156, § 4 (c).  Even a mortgage or sale of "all its property and assets" may be authorized by a two-thirds vote of each class of stock.  G. L. (Ter. Ed.) c. 156, § 42.  *Susser* v. *Cambria Chocolate Co.* 300 Mass. 1.

The bill sets forth the following facts.  The capital stock of East Boston Company is divided into one hundred fifty thousand shares of the par value of $10 each.  Three thousand five hundred fifteen shares are in the treasury.  The defendant Foss owns or controls a majority of the shares, and has done so for many years.  He controls as well a majority of the board of directors.  Late in 1928 he caused the directors to execute a corporate note for $350,000, secured by a mortgage covering a large part of the land of the corporation, to Wetmore Savage Company, a corporation controlled by one Wetmore.  Only $38,644.27 was received as consideration, and that was turned over to a corporation called Boston Port Development Company.

The directors also conveyed to Boston Port Development Company all the land of East Boston Company in East Boston, which constituted substantially all its property, in exchange for all the preferred and common stock of Boston Port Development Company, forty-nine per cent of which was immediately turned over to one McDonald. Whether McDonald furnished any consideration is not stated, but it is alleged that the stock was turned over to him pursuant to a scheme of Foss, Wetmore and McDonald to cause the real estate to be manipulated by them through the instrumentality of Boston Port Development Company without the knowledge or supervision of the stockholders of East Boston Company.

The prayers ask a distribution among the stockholders of East Boston Company of its holdings of stock in Boston Port Development Company, and the appointment of a receiver of the assets of East Boston Company. Neither Wetmore nor McDonald is made a party. After the demurrer of each defendant was sustained, a final decree was entered dismissing the bill with costs. The plaintiff appealed from the final decree, and that appeal opened for revision the interlocutory decree sustaining the demurrers. *Nochemson* v. *Aronson*, 279 Mass. 278, 280. The demurrers are general to the whole bill, and ought to have been overruled if any case for relief is stated in the bill. *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 484. *Shea* v. *Shea*, 296 Mass. 143, 147–148. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53, 57.

The bill cannot be maintained for the purpose stated in its prayers, of requiring a distribution among the stockholders of East Boston Company of the shares of stock of Boston Port Development Company received from that company and now in the treasury of East Boston Company. That would in substance wind up the affairs of East Boston Company, and leave it an empty shell. Each stockholder has entrusted the management of the corporation to the officers, the directors and the stockholders as a body. Statutory provisions for dissolution by vote of a majority of each class of stock exist. G. L. (Ter. Ed.) c. 155,

§ 50. St. 1933, c. 66. The general equity jurisdiction of the courts does not extend to distributing the assets of a corporation merely because need for its continued existence is not apparent. *Cook* v. *Cook*, 270 Mass. 534, 542. See also *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, 404, 405; *Calnan* v. *Guaranty Security Corp.* 271 Mass. 533, 542, 543.

In the present case we need not examine the bill critically to see whether its rather vague allegations of misconduct on the part of the defendants and others show a right in the plaintiff to obtain on behalf of East Boston Company a rescission of some of the transactions set forth and adversely criticised in the bill. Ordinarily the allegations of fact in the stating part of the bill, and not the special prayers, determine, upon a demurrer as well as upon appeal from a final decree granting relief, whether a case for relief is stated, for by our statute a prayer for general relief is in legal effect a part of every bill. *Bushnell* v. *Avery*, 121 Mass. 148. *Raynes* v. *Sharp*, 238 Mass. 20, 24. *Martell* v. *Dorey*, 235 Mass. 35, 39. *Thayer* v. *Atwood*, 259 Mass. 523. *Alden Bros. Co.* v. *Dunn*, 264 Mass. 355, 363, 364. *North Easton Co-operative Bank* v. *MacLean*, 300 Mass. 285, 294–295. In *Cook* v. *Martyn*, 2 Atk. 2, 3, Lord Chancellor Hardwicke quoted "Mr. Robins, a very eminent counsel," as saying that "general relief was the best prayer next to the Lord's prayer." But there is a limit to the efficacy of the prayer for general relief. A plaintiff may obtain any relief "consistent with the nature of his case, under the prayer of general relief." *Kinnoul* v. *Money*, 3 Swanst. 202, 208, note. But it has long been settled, that "no relief can be given upon it that is inconsistent with the specific relief prayed." *Walpole* v. *Orford*, 3 Ves. 402, 416. *Grimes* v. *French*, 2 Atk. 141. *Hiern* v. *Mill*, 13 Ves. 114, 119. *Stevens* v. *Guppy*, 3 Russ. 171, 184, 185. *Cella* v. *Brown*, 144 Fed. 742, 755. *Miller* v. *Hamner*, 269 Fed. 891, 896. *New City Building & Loan Association* v. *Testa*, 109 N. J. Eq. 499. *Waring* v. *Stinchcomb*, 141 Md. 569, 584, 585. *Blue* v. *Blue*, 92 W. Va. 574, 582. Langdell, Eq. Pl. (2d ed. 1883) §§ 61–63. Mitf. Ch. Pl. (4th ed. by Jeremy) 38, 39. Story, Eq. Pl. (10th ed.) § 42. This prin-

ciple has been recognized in this Commonwealth. *Chinese American Restaurant Corp.* v. *Finigan,* 272 Mass. 360. *Kidder* v. *Greenman,* 283 Mass. 601, 611–613. *Gamwell* v. *Bigley,* 253 Mass. 378, 381, 382. *Thayer* v. *Atwood,* 259 Mass. 523, 527. *Machinists' National Bank* v. *Field,* 126 Mass. 345, 348.

The present bill is not framed with a double aspect, and does not pray for inconsistent relief in the alternative. *Package Confectionery Co. Inc.* v. *Perkit,* 281 Mass. 554, 555. *Hardin* v. *Boyd,* 113 U. S. 756. It points wholly in one direction, towards the validity of the transactions set forth. It prays for no rescission. It prays merely that the fruits of these transactions be distributed. Under the circumstances the prayer for general relief does not authorize the granting of different relief, wholly inconsistent with the special prayer.

> *Interlocutory decree sustaining demurrers affirmed.*
> *Final decree affirmed with costs.*