## SYLVAN CREST SAND & GRAVEL CO. v. UNITED STATES.

### No. 345.

Circuit Court of Appeals, Second Circuit.

July 30, 1945.

David R. Lessler, of Bridgeport, Conn., for appellant.

Robert P. Butler, U. S. Atty., of Hartford, Conn. (Milton Nahum, Asst. U. S. Atty., of Hartford, Conn., of counsel), for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an action for damages for breach of four alleged contracts under each of which the plaintiff was to deliver trap rock to an airport project "as required" and in accordance with delivery instructions to be given by the defendant. The breach

alleged was the defendant's refusal to request or accept delivery within a reasonable time after the date of the contracts, thereby depriving the plaintiff of profits it would have made in the amount of $10,000. The action was commenced in the District Court, federal jurisdiction resting on 28 U.S.C.A. § 41(20). Upon the pleadings, consisting of complaint, answer and reply, the defendant moved to dismiss the action for failure of the complaint to state a claim or, in the alternative, to grant summary judgment for the defendant on the ground that no genuine issue exists as to any material fact. The contracts in suit were introduced as exhibits at the hearing on the motion. Summary judgment for the defendant was granted on the theory that the defendant's reservation of an unrestricted power of cancellation caused the alleged contracts to be wholly illusory as binding obligations. The plaintiff has appealed.

■ The plaintiff owned and operated a trap rock quarry in Trumbull, Conn. Through the Treasury Department, acting by its State Procurement Office in Connecticut, the United States invited bids on trap rock needed for the Mollison Airport, Bridgeport, Conn. The plaintiff submitted four bids for different sized screenings of trap rock and each bid was accepted by the Assistant State Procurement Officer on June 29, 1937. The four documents are substantially alike and it will suffice to describe one of them. It is a printed government form, with the blank spaces filled in in typewriting, consisting of a single sheet bearing the heading:

"Invitation, Bid, and Acceptance
"(Short Form Contract)"

Below the heading, under the subheadings, follow in order the "Invitation," the "Bid," and the "Acceptance by the Government." The Invitation, signed by a State Procurement Officer, states that "Sealed bids in triplicate, subject to the conditions on the reverse hereof, will be received at this office * * * for furnishing supplies * * * for delivery at WP 2752— Mollison Airport, Bridgeport, Ct." Then come typed provisions which, so far as material, are as follows:

"Item No. 1. ½" Trap Rock to pass the following screening test * * * approx. 4000 tons, unit price $2.00 amount $8000. To be delivered to project as required. Delivery to start immediately. Communicate with W. J. Scott, Supt. W. P.A. Branch Office, 147 Canon Street, Bridgeport, Ct., for definite delivery instructions. Cancellation by the Procurement Division may be effected at any time."

The Bid, signed by the plaintiff, provides that

"In compliance with the above invitation for bids, and subject to all of the conditions thereof, the undersigned offers, and agrees, if this bid be accepted * * * to furnish any or all of the items upon which prices are quoted, at the prices set opposite each item, delivered at the point (s) as specified, * * *."

The Acceptance, besides its date and the signature of an Assistant State Procurement Officer, contains only the words "Accepted as to items numbered 1." The printing on the reverse side of the sheet under the heading "Conditions" and "Instructions to Contracting Officers" clearly indicates that the parties supposed they were entering into an enforcible contract. For example, Condition 3 states that "in case of default of the contractor" the government may procure the articles from other sources and hold the contractor liable for any excess in cost; and Condition 4 provides that "if the contractor refuses or fails to make deliveries * * * within the time specified * * * the Government may by written notice terminate the right of the contractor to proceed with deliveries * * *." The Instructions to Contracting Officers also presupposes the making of a valid contract; No. 2 reads:

"Although this form meets the requirements of a formal contract (R.S. 3744), if the execution of a formal contract with bond is contemplated, U. S. Standard Forms 31 and 32 should be used."

No one can read the document as a whole without concluding that the parties intended a contract to result from the Bid and the Government's Acceptance. If the United States did not so intend, it certainly set a skilful trap for unwary bidders. No such purpose should be attributed to the government. See United States v. Purcell Envelope Co., 249 U.S. 313, 318, 39 S.Ct. 300, 63 L.Ed. 620. In construing the document the presumption should be indulged that both parties were acting in good faith.

■ Although the Acceptance contains no promissory words, it is conceded that a

promise by the defendant to pay the stated price for rock delivered is to be implied.[1] Since no precise time for delivery was specified, the implication is that delivery within a reasonable time was contemplated. Allegheny Valley Brick Co. v. C. W. Raymond Co., 2 Cir., 219 F. 477, 480; Frankfurt-Barnett v. William Prym Co., 2 Cir., 237 F. 21, 25. This is corroborated by the express provision that the rock was "to be delivered to the project as required. Delivery to start immediately." There is also to be implied a promise to give delivery instructions; nothing in the language of the contracts indicates that performance by the plaintiff was to be conditional upon the exercise of the defendant's discretion in giving such instructions. A more reasonable interpretation is that the defendant was placed under an obligation to give instructions for delivery from time to time when trap rock was required at the project. Such were the duties of the defendant, unless the cancellation clause precludes such a construction of the document.

█ Beyond question the plaintiff made a promise to deliver rock at a stated price; and if the United States were suing for its breach the question would be whether the "acceptance" by the United States operated as a sufficient consideration to make the plaintiff's promise binding. Since the United States is the defendant the question is whether it made any promise that has been broken. Its "acceptance" should be interpreted as a reasonable business man would have understood it. Surely it would not have been understood thus: "We accept your offer and bind you to your promise to deliver, but we do not promise either to take the rock or pay the price." The reservation of a power to effect cancellation at any time meant something different from this. We believe that the reasonable interpretation of the document is as follows: "We accept your offer to deliver within a reasonable time, and we promise to take the rock and pay the price unless we give you notice of cancellation within a reasonable time." Only on such an interpretation is the United States justified in expecting the plaintiff to prepare for performance and to remain ready and willing to deliver. Even so, the bidder is taking a great risk and the United States has an advantage. It is not "good faith" for the United States to insist upon more than this.

It is certain that the United States intended to bind the bidder to a "contract," and that the bidder thought that the "acceptance" of his bid made a "contract". A reasonable interpretation of the language used gives effect to their mutual intention. Consequently we cannot accept the contention that the defendant's power of cancellation was unrestricted and could be exercised merely by failure to give delivery orders. The words "cancellation may be effected at any time" imply affirmative action, namely, the giving of notice of intent to cancel. The defendant itself so construed the clause by giving notice of cancellation on July 11, 1939, as alleged in its answer. While the phrase "at any time" should be liberally construed, it means much less than "forever." If taken literally, it would mean that after the defendant had given instructions for delivery and the plaintiff had tendered delivery in accordance therewith, or even after delivery had actually been made, the defendant could refuse to accept and when sued for the price give notice of cancellation of the contract. Such an interpretation would be not only unjust and unreasonable, but would make nugatory the entire contract, contrary to the intention of the parties, if it be assumed that the United States was acting in good faith in accepting the plaintiff's bid. The words should be so construed as to support the contract and not render illusory the promises of both parties. This can be accomplished by interpolating the word "reasonable", as is often done with respect to indefinite time clauses. See Starkweather v. Gleason, 221 Mass. 552, 109 N.E. 635. Hence the agreement obligated the defendant to give delivery instructions or notice of cancellation within a reasonable time after the date of its "acceptance." This constituted consideration for the plaintiff's promise to deliver in accordance with delivery instructions, and made the agreement a valid contract.

██ It must be conceded that the cases dealing with agreements in which one party has reserved to himself an option to cancel are not entirely harmonious. Where the option is completely unrestricted some courts say that the party having the option has promised nothing and the contract is void for lack of mutuality. Miami Coca-Cola Bottling Co. v. Orange Crush Co., 5 Cir., 296 F. 693; Oakland Motor

---

[1] The answer alleges that certain deliveries were made, all of which were duly paid for by the United States, and the reply admitted this.

Car Co. v. Indiana Automobile Co., 7 Cir., 201 F. 499. These cases have been criticized by competent text writers and the latter case cited by this court "with distinct lack of warmth", as Judge Clark noted in Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675, 678. But where, as in the case at bar, the option to cancel "does not wholly defeat consideration", the agreement is not nudum pactum. Corbin, The Effect of Options on Consideration, 34 Yale L.J. 571, 585; see Hunt v. Stimson, 6 Cir., 23 F.2d 447; Gurfein v. Werbelovsky, 97 Conn. 703, 118 A. 32. A promise is not made illusory by the fact that the promissor has an option between two alternatives, if each alternative would be sufficient consideration if it alone were bargained for. A. L. I. Contracts, § 79. As we have construed the agreement the United States promised by implication to take and pay for the trap rock or give notice of cancellation within a reasonable time. The alternative of giving notice was not difficult of performance, but it was a sufficient consideration to support the contract.

The judgment is reversed and the cause remanded for trial.