CHARLES P. VALLIS & another *vs.* JOHN RIMER & another.

Essex.    January 9, 1957. — March 5, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Agency,* Broker, Scope of authority or employment.  *Broker,* Scope of authority.  *Contract,* For sale of real estate, Reformation.  *Mistake. Equity Jurisdiction,* Reformation, Mistake.  *Equity Pleading and Practice,* Bill, Decree.

A broker hired by an owner of real estate merely to find a customer to purchase it on terms to be finally decided by the owner had no authority, in procuring the signature of a customer to a sale and purchase contract containing no provision for return of his deposit if the sale were not approved by the veterans' administration for the purpose of a G. I. mortgage desired by him, to promise him that the deposit would be returned if such approval were not given.  [532]

A suit in equity by the prospective buyer under a contract for sale and purchase of real estate seeking reformation of the contract by adding a provision, not included in it as drawn by an attorney representing the seller's broker, that the buyer's deposit would be returned if the veterans' administration should not approve the sale for the purpose of a G. I. mortgage known to the seller to be desired by the buyer could not be maintained on the ground of fraud or mutual mistake, although the buyer noticed the absence of such a provision and only signed the contract upon the broker's promise that the deposit would be returned if such approval were not given, where it was not shown that the seller agreed to the provision for return of the deposit or intended to include it in the contract, or authorized the broker to make any promises respecting the matter, or knew when he signed the contract that any question about the inclusion of the provision therein had been raised or that the broker had made any promise to the buyer.  [532–533]

Relief by rescission of a contract should not be given in a suit in equity under the prayer for general relief in the bill where the only relief specifically prayed for was reformation of the contract.  [533]

BILL IN EQUITY, filed in the Superior Court on March 7, 1955.

The suit was heard by *Good, J.*

*Charles Demakis,* (*John J. Jennings* with him,) for the plaintiffs.

*Harold Rosenwald,* (*Hugh D. Rogovin* with him,) for the defendants.

CUTTER, J.    This is a bill in equity by one Vallis and his wife to obtain reformation of a written agreement for the purchase by them from Rimer, one of the defendants,[1] of a piece of real estate in Marblehead owned by him, by adding to it a provision, reading in part, "this agreement is subject to approval by the Veterans' Administration . . . and if this agreement is not approved by the Veterans' Administration, then all the moneys paid hereunder shall be refunded." A decree was entered dismissing the bill and the plaintiffs appealed from this decree.

The trial judge found and concluded (1) that there was no evidence to support an allegation in the bill that the provision which the plaintiffs seek to add to the written agreement was omitted "through the fraud of" Rimer; (2) that the plaintiffs had not sustained "the burden of proving that the written agreement was incorrectly drafted in relation to the return of a deposit through error, mistake" or inadvertence; and (3) "that, during the discussion preceding the execution of the written agreement, there was no agreement that" the plaintiffs and Rimer, represented by one Harvey, a broker, "would buy and sell the real estate only if the Veterans' Administration approved the . . . agreement." The evidence is reported. Questions of fact as well as of law are before us for decision, giving due weight to the findings of the trial judge which will not be reversed unless plainly wrong.

In November, 1954, Rimer was asked by a lady (hereinafter called the broker) who was starting out in the real estate business if she could earn a commission if she sold for him the property here in question, which was then on the market. He initially authorized a sale for $36,000, the broker to receive a commission of $1,000. The broker thereupon approached Mrs. Vallis and showed the house to both plaintiffs. After negotiations, oral agreement was reached by Rimer and the plaintiffs, through the broker, for a sale

[1] The other defendant is his wife.

for $31,000, with an immediate deposit of $1,500, which was made on December 1, 1954, and was paid on December 7 by the bank on which it was drawn.

The plaintiffs proposed to purchase the house by means of a G. I. mortgage guaranteed in part by the veterans' administration. To obtain such a mortgage, it was necessary that there be an appraisal of the house by a representative of the veterans' administration at not less than the proposed sale price. See U. S. C. (1952 ed. and Sup. III) Title 38, §§ 694, 694a; *Karrell* v. *United States*, 181 Fed. (2d) 981, 983 (C. A. 9), certiorari denied 340 U. S. 891; *Veino* v. *Bedell*, 99 N. H. 274, 275.

The broker knew of the plans for a G. I. mortgage. She had been told by the plaintiffs that the plaintiffs could not buy the house except with the aid of a G. I. mortgage. She testified that she reported this to Rimer and that Rimer agreed to a sale for $31,000 in this manner and told her to "get the agreement." A closing date on February 10, 1955, was arranged which would allow time for completion of a G. I. loan. Rimer was familiar with veterans' administration arrangements, at least in a general way, and was a man of substantial business experience in real estate transactions.

The broker caused a written agreement of purchase and sale to be drawn by her own lawyer (who was representing her, not Rimer). Although it contained everything she asked to have put in it, the agreement did not contain any provision for return of the deposit of $1,500 in the event that the sale was not approved by the veterans' administration. Compare *Horlick* v. *Wright*, 104 Atl. (2d) 825, 826 (Mun. Ct. of App. D. C.). The plaintiffs noticed the absence of such a provision and inquired of the broker about it. Vallis asked the broker "if he could get his money back if" the veterans' administration loan did not go through and the broker said he could. The plaintiffs thereupon signed the agreement with the request to the broker that Rimer should not cash the deposit check until the G. I. loan was approved. The broker told the plaintiffs she "could not promise . . . that Rimer would not cash the check, but she

could promise that he would get the money back if the G. I. didn't approve." Rimer and his wife thereafter signed the agreement, on December 10 according to his testimony.

Prior to signing the agreement Rimer and Vallis never met. They communicated through the broker. Rimer denied that the broker's statement with respect to the return of the deposit was communicated to him prior to his signing the agreement on December 10, 1954. The broker, when specifically asked whether she told Rimer that if the veterans' administration "didn't approve . . . Vallis would want his money back," replied, "No. I was a new broker. I don't think I brought out the point." In the face of this evidence (which was much more explicit than other testimony by the broker which might tend to show that she had communicated to Rimer the requested condition) the judge plainly was justified in concluding that there was in fact no agreement by Rimer himself that the sale would take place "only if the Veterans' Administration approved."

About a month after the agreement was signed, the veterans' administration appraised the property at $28,500, thus preventing a sale at a higher figure, if a G. I. mortgage was to be given. Various efforts were made to persuade Rimer to sell at a lower figure. Vallis negotiated with Rimer directly by telephone. The latter offered other mortgage arrangements which (although some of them appeared to be substantially as favorable as the G. I. terms) were unacceptable to the plaintiffs. They did not go through with the purchase. About a month after the date set for completion of the sale, Rimer sold the property to others for $30,000.[1] Rimer refused to return the deposit to the plaintiffs. He had withdrawn the house from the market upon receipt of the deposit early in December and had taken down a sign which he had put up on the premises. He also incurred carrying charges for the month between February 10, 1955, the date when conveyance was to have been made to the plaintiffs, and the subsequent sale to others.

---

[1] A counterclaim for damages was dismissed for want of proof of damages. As the defendants have not appealed, this is not here in issue.

A real estate broker is normally not a general agent, but is usually a special agent of restricted authority, and a person dealing with such a broker has implied notice of this limited authority and must ascertain at his peril what the bounds of the authority are. *Harrigan* v. *Dodge*, 216 Mass. 461, 463–465. *DeBlois* v. *Boylston & Tremont Corp.* 281 Mass. 498, 514–515. See *Marquandt* v. *Boston Young Women's Christian Association*, 282 Mass. 28, 30–31; Restatement: Agency, § 53, comment b, § 54, comment c; Mechem, Agency (2d ed.) § 797. Compare cases involving agents having more general powers, *Wasserman* v. *Cosmopolitan Trust Co.* 252 Mass. 253, 256; *Hale* v. *Texas Co.* 264 Mass. 246, 248–249; *Ferris* v. *Boston & Maine Railroad*, 291 Mass. 529; *Alfred J. Silberstein Inc.* v. *Nash*, 298 Mass. 170, 172–173 (general agent handling all advertising for a protective committee).

Nothing in the present record tends to show that the broker had any authority from Rimer except to find a customer. (See Restatement: Agency, § 53, comment b.) Rimer plainly reserved to himself the final determination of the terms to be inserted in the written agreement of purchase and sale, which the plaintiffs and both Rimer and his wife executed as principals and not by an agent. There is no evidence (a) of any agreement by Rimer to the provision which the plaintiffs contend was erroneously omitted from the contract, or (b) of any express authority from Rimer to the broker to vary that written agreement or to make representations that it would not be enforced according to its terms. The plaintiffs have not sustained the burden of showing that the contract between them and Rimer should include a provision that the deposit would be returned if the G. I. mortgage was not approved.

There was no mutual mistake here or mistake on either side concerning the contents of the agreement. All the parties knew that it did not contain any provision for the return of the deposit in the event that approval of the proposed mortgage was not given. The plaintiffs have not sustained the burden of showing that Rimer intended to

include such a provision or had any knowledge, when he accepted the deposit or later when he signed the agreement, that any question had been raised about the inclusion of such a provision or that any promises, as alleged, had been made by the broker. See *Barrell* v. *Britton*, 252 Mass. 504, 508; *Century Plastic Corp.* v. *Tupper Corp.* 333 Mass. 531, 533–535. Compare *Mates* v. *Penn Mutual Life Ins. Co.* 316 Mass. 303, 306 (reformation allowed for mutual mistake known to adverse party before delivery of an insurance policy). There is also nothing in the record which would support any conclusion that there was any mutual mistake as to the legal effect of the written agreement, or of the omission here discussed, such as that considered in *Franz* v. *Franz*, 308 Mass. 262, 266.

The trial judge correctly found that there was no evidence to support the allegation of fraud by Rimer in the omission of a provision for refund of the deposit. The plaintiffs clearly knew that there was no such provision in the agreement for they complained of its omission. They have proved no authority on the part of the broker to make any oral promise, either (a) to include such a provision or (b) that refund would be made if the mortgage was not approved. There is thus no showing of facts which entitle the plaintiffs to any reformation of the contract (see *Dzuris* v. *Pierce*, 216 Mass. 132, 135) because of either fraud or mutual mistake. See Restatement: Contracts, §§ 503–505.

Although the issue of rescission was not raised before the trial judge, counsel for the plaintiffs have argued the case as if they were also seeking rescission. The bill contains only a prayer for reformation and a general prayer for relief. There is no prayer for rescission and it is well settled that no relief can be given under the general prayer for relief which is inconsistent with the specific relief prayed for in the bill. *Bleck* v. *East Boston Co.* 302 Mass. 127, 130–131. *Enterprises, Inc.* v. *Cardinale*, 331 Mass. 244, 247. See *Garden Homes, Inc.* v. *Mason*, 143 Fed. Sup. 144, 145.

*Decree affirmed.*