POWERS, INC. *vs.* THE WAYSIDE, INC. OF FALMOUTH
& another.

Middlesex.    October 6, 1961. — March 1, 1962.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* For resale of real estate, Option, Rescission. *Option. Law or Fact. Time. Equity Jurisdiction,* Specific performance, Rescission, Laches. *Sale,* Rescission. *Laches. Equity Pleading and Practice,* Bill.

Under an agreement between a buyer and seller of land executed simultaneously with a conveyance of the land to the buyer and providing that, if the seller did not remedy an acknowledged defect in title within the next six months nor "immediately" thereafter file a petition for land registration, the buyer, upon the expiration of seven days following the six months period, might "at its option . . . elect to rescind" the transaction, deliver a quitclaim deed to the seller and be refunded the full original purchase price and be reimbursed for expenses incurred and improvements made, but not specifying any period for exercise of the option, there arose, upon the expiration of seven days following the six months period without the seller having remedied the title defect or filed the petition, an option in favor of the buyer to resell the land to the seller, and such option was to be exercised within a reasonable time thereafter; a contention of the seller that the option was to be exercised not later than six months and seven days after the agreement was executed was without merit.    [689–691]

What was a reasonable time for a buyer of property to exercise an option to resell it to the seller was a question of law on undisputed facts. [691]

Under an agreement executed on December 24 between a buyer and seller of summer restaurant premises conveyed on that day to the buyer, providing that, if the seller did not remedy an acknowledged defect in title within the next six months nor "immediately" thereafter file a petition for land registration, the buyer, upon the expiration of seven days following the six months period, should have an option for a reasonable time to resell the premises to the seller, deliver him a quitclaim deed, and be refunded the full original purchase price and reimbursed for expenses incurred and improvements made, without any provision for any allowance to the seller for the value of use of the property by the buyer, a purported exercise of the option almost ten months after it arose and after the buyer had used the premises as a restaurant through one summer was, as matter of law, not within a reasonable time in the circumstances and did not create a contract to resell.    [691–692]

Where a contract between a buyer and seller of property gave the buyer, upon failure of the seller to perform certain obligations, which occurred, an option for a reasonable time to resell and reconvey the property to the seller and to receive from him the full purchase price and reimbursement for expenses incurred and improvements made, but the option as matter of law was not exercised within a reasonable time and no such contract of resale was created, the buyer in the circumstances might nevertheless be granted relief in equity by rescission of the sale and restoration, including an allowance to the seller of the value of the buyer's use of the property, upon a bill containing allegations of fact and a general prayer supporting such relief and a special prayer not inconsistent therewith, and upon a finding that "delay by the plaintiff in the exercise of . . . [the] option . . . was not prejudicial to the defendant and there was no laches on the part of the plaintiff." [692–695]

BILL IN EQUITY, filed in the Superior Court on May 4, 1960. The suit was heard by *Wisnioski, J.,* on a master's report.

*Arthur J. Travers,* for the defendants.

*Louis Karp, (Arthur L. Murray* with him,) for the plaintiff.

KIRK, J. This is an appeal from a decree granting to the plaintiff Powers, Inc. (Powers), specific performance of certain provisions of a written agreement made between it and the defendant The Wayside, Inc. of Falmouth (Wayside).

We summarize the facts found in the confirmed report of the master. On December 24, 1958, Wayside conveyed to Powers by quitclaim deed certain premises in Falmouth which were operated as a summer restaurant with an alcoholic beverage license.

The purchase price was $25,000 paid in the form of (a) $8,000 in cash, (b) $3,798.77 by the assumption of the balance due on a first mortgage note held by a bank, and (c) $13,201.23 by a promissory note from Powers payable to Wayside and secured by a second mortgage on the premises. Simultaneously with the conveyance, the parties executed a written contract which incorporated by reference the deed and mortgage, recited that Wayside acknowledged that the title was defective because of the absence of a signature by a predecessor in title, and made further pro-

visions, the pertinent parts of which, as fairly condensed by the master, we set out comprehensively.[1]

Powers has made the payments on the first mortgage note to the bank. It made interest payments on the note held by Wayside through May 24, 1959, but made no payments of interest or principal thereafter on that note, because up to June 24, 1959, and thereafter Wayside had "failed to per-

---

[1] "... [Powers] 'has accepted the aforesaid conveyance from ... [Wayside] upon the express promises and agreement made hereinafter by ... [Wayside], it being intended hereby that such express promises and agreements shall survive the delivery of such deed'; the defendant, Vasco A. Lima, 'who is the owner of all the outstanding capital stock in ... (The Wayside Inc. of Falmouth) will become bound to guarantee the performance of all the obligations to be undertaken hereunder by ... (The Wayside Inc. of Falmouth); ... [Wayside] does hereby agree, at its cost, to do all things necessary to remedy the defects in title as affecting the ownership of the (real estate concerned herein) ... [Wayside] further agrees that when such defects are remedied, the aforesaid title shall be marketable, legal and good and clear of record excepting a prior mortgage held by Middlesex Federal Savings and Loan Association. Time being of the essence of this agreement, ... [Wayside] agrees to remedy such aforesaid defects in six (6) months from the date hereof'; 'In the event that ... [Wayside] does not remedy the defects in title in the manner and within the time provided ... [Wayside] does hereby agree to file a petition in the Land Court immediately upon the expiration of the six months period hereinbefore provided, for the registration of all the aforesaid land ...'; 'In the event that ... [Wayside] fails and neglects to file the petition for land registration as aforesaid, then upon the expiration of seven (7) days following the aforesaid six month period, ... [Powers] may, at its option, ... prepare and file a petition for land registration as aforesaid ...'; 'If, at the expiration of the six month period hereinabove provided, ... [Wayside] has not remedied the defects in title as aforesaid or has not within seven days thereafter filed a petition in the Land Court for Land Registration ... [Powers] may, at its option, in lieu of filing a petition for land registration as provided in paragraph 3 hereof, elect to rescind the agreement for the purchase and sale of the aforesaid land and the conveyance made subsequent thereto, and in the event of such rescission by ... [Powers]: (a) ... [Powers] shall execute and deliver a quitclaim deed covering the land which is the subject matter of this transaction to ... [Wayside] subject to the mortgage held by the Middlesex Federal Savings and Loan Association; (b) simultaneously therewith ... [Wayside] shall execute and deliver to ... [Powers] the promissory note and discharge of mortgage given by ... [Powers] to ... [Wayside] and bearing even date; (c) ... [Wayside] shall refund to ... [Powers] all sums paid to it in connection with the aforesaid purchase and sale and conveyance and shall reimburse ... [Powers] for all payments of principal and interest made by it on all mortgages affecting said real estate and for all sums expended by ... [Powers] for improvements on said real estate and any and all expenses incurred by ... [Powers] in connection with its acquisition of said real estate'; 'The (defendant, Vasco A. Lima) does hereby guaranty unto ... [Powers] the performance by ... [Wayside] of all of its obligations hereunder and does hereby indemnify, exonerate and forever hold harmless ... [Powers] of and from all damages, claims and demands resulting from the aforesaid defect in title'; and 'It is hereby agreed by and between the parties hereto that the obligations contained herein on the part of ... [Wayside] to be performed shall continue beyond the date of these presents and shall thus survive the delivery of the deed hereunder.' "

form its obligation to remedy the title defect or file a petition for land registration in the Land Court under the terms of the contract.'' On August 13, 1959, Wayside, pursuant to the acceleration clause in the note, made demand on Powers for payment in full. Upon Powers's failure to comply, Wayside commenced foreclosure proceedings and a decree authorizing foreclosure was entered on March 16, 1960. The foreclosure was enjoined after the commencement of this suit on May 4, 1960.

On April 22, 1960, Powers notified Wayside that it was exercising its ''option to rescind the contract'' and demanded of Wayside a discharge of the mortgage, cancellation of the mortgage note, and reimbursement of all payments of principal and interest on both first and second mortgages, and of all sums expended by Powers in the acquisition of the property or for improvements made on it. Wayside refused this demand and refused a formal tender of a quitclaim deed to the premises. Thereupon followed this bill in equity against Wayside and Lima, its treasurer, who had guaranteed Wayside's obligations under the contract.

The decree entered by the judge ordered Wayside and Lima to comply with the demands of Powers for payment, enjoined the transfer of the note and mortgage, enjoined foreclosure proceedings under them, and declared the note and mortgage null and void. Provision was made for the appointment of a commissioner to carry out the terms of the decree if the defendants should not comply.

The decree cannot stand in its present terms. The interpretation of the written contract, including the option contained in it, is a question of law for the court. *Shayeb* v. *Holland*, 321 Mass. 429, 431, and cases cited. See *Tri-City Concrete Co. Inc.* v. *A. L. A. Constr. Co., ante,* 425, 427. Notwithstanding the language of the contract that under certain conditions Powers ''may, at its option . . . elect to rescind the [transaction],'' we think that under a proper construction of the contract the parties had agreed in substance that if the named conditions continued to exist at the

time specified there would arise in favor of Powers an option to *resell* to Wayside the property interest it had received from Wayside at a price equivalent to the original purchase price paid by Powers to Wayside, plus whatever amounts, up to the time of the exercise of the option, Powers had expended in connection with the acquisition of the premises or for improvements. Viewing the option in this light, the question arises as to its duration, i.e., the time within which Powers, by exercising the option, could create an executory contract binding itself to reconvey, and Wayside to repurchase, the premises. The contract did not prescribe a specific time within which the option could be exercised. Wayside contends that a correct construction of the contract requires that Powers exercise the option *not later than* six months and seven days after the date of the execution of the contract. We do not agree. In that contract, Wayside agreed to remedy the title defect within six months, i.e., by June 24, 1959. It also agreed that, if by that time it had not remedied the defect, it would "immediately" file a petition in the Land Court for registration of the land. It did neither. Wayside thereby committed a breach of its contract, thus entitling Powers to pursue the ordinary remedies for such a breach. Under the terms of the contract, however, Powers's option did not arise until seven days after the six months' period. See *New England Trust Co.* v. *Spaulding,* 310 Mass. 424, 430. Therefore, acceptance of Wayside's contention as to the duration of the option would mean that the option expired at the same time that it arose. Such a contention refutes itself and we reject it.[2] See *Shayeb* v. *Holland,* 321 Mass. 429, 432.

It is our view that Powers's right to exercise the option

---

[2] The provision, "Time being of the essence of this agreement," adds nothing to this specific contention of Wayside. In the first place, this participial phrase must be viewed in context: "Time being of the essence of this agreement . . . [Wayside] agrees to remedy such aforesaid defects in six (6) months from the date hereof." Thus read, the phrase seems clearly to apply only to Wayside's obligation to remedy the title defect and not to Powers's right to exercise the option. Secondly, even assuming that the phrase is of general application to the contract, Wayside can point to no time which would be of the essence since there is no time limit specified in the contract with regard to Powers's right to exercise the option.

continued for a reasonable time after the expiration of the six months' and seven days' period following the date of the original contract. *Starkweather* v. *Gleason,* 221 Mass. 552, 553. See *Loring* v. *Boston,* 7 Met. 409, 412–413; Anno. 88 A. L. R. 842, 843; Restatement: Contracts, § 40 (1). "Where the evidence is in dispute and open to different inferences, the question whether an act has been done within a reasonable time after the happening of a certain event is ordinarily a question of fact, but where [as here] the facts are not in dispute the question becomes one of law." *Bruns* v. *Jordan Marsh Co.* 305 Mass. 437, 445, and cases cited. See *Starkweather* v. *Gleason,* 221 Mass. 552, 553.

What is a reasonable time depends on all the circumstances of the case. When the offer is one of sale or purchase, the subject matter of the offer is sometimes the major factor. See *Starkweather* v. *Gleason,* 221 Mass. 552, 553 (stock fluctuating in value). See also *Park* v. *Whitney,* 148 Mass. 278. Where, however, such an offer is made in the context of a contract of which it is merely one part and to whose other provisions it is inextricably bound, such other provisions may be of a significance at least equal to that of the subject matter in determining what is a reasonable time for the offer to be outstanding. We hold that in the light of the provisions of the original contract, the circumstances under which it was executed, and the nature of the property which was its subject, the exercise of the option by Powers on April 22, 1960, almost ten months after it arose, was, as a matter of law, too late and that in legal consequence the purported exercise of the option on that date created no contract binding upon either Powers or Wayside.

We reach this conclusion for the following reasons: Powers apparently desired the property for use as a summer restaurant and in fact did use it for this purpose in 1959. The expiration of the time during which Wayside was obliged to remedy the title defect or file a petition for registration in the Land Court coincided approximately with the beginning of the summer season. The option to

resell was to arise in seven days after June 24, 1959, if Wayside had not performed its obligation. It would seem, therefore, clearly inferable that it was the intention of the parties that Powers should be in a position to decide at the end of the stated period or shortly thereafter whether it would keep the property and operate it as a summer restaurant despite the title defect, or call off the entire transaction and recover whatever it had paid by way of purchase price and had expended for improvements in anticipation of its planned operation.

We think, furthermore, that it would be quite unreasonable to attribute to the parties the intent that, Wayside having failed to perform, Powers could use the premises to operate its business through the summer and then, several months thereafter, compel Wayside to repurchase the property at the full purchase price plus expenditures made by Powers without allowance by way of reduction of the purchase price for the value of the use and enjoyment of the property by Powers.

Accordingly, we hold that on April 22, 1960, the offer by Wayside to repurchase, embodied in the option, had expired and that in consequence Powers's attempted acceptance of it on that date created no contract. There being no contract, there can be no specific performance. It follows that the decree entered by the judge cannot stand.

We think, nevertheless, that Powers is entitled to relief on the facts found. The question presented is what form the relief is to take in the light of the pleadings and the findings. As stated at the outset of this opinion, Powers's option as described in the contract was an option to *"rescind"* the transaction. The use of this term is the apparent cause of some confusion in the manner in which the case has been successively pleaded, tried, argued, and disposed of. The decree is based upon a prayer for specific performance of a contract to repurchase, which, as we have already ruled, is untenable. The findings of the master seem addressed to the theory of rescission. The master made, for example, the very significant finding, that "any

delay by the plaintiff [Powers] in the exercise of its option to rescind the contract . . . was not prejudicial to the defendant [Wayside] and there was no laches on the part of the plaintiff." This finding is not inconsistent with any other finding of the master. We, therefore, accept it as true and think that upon it we can, in view of the peculiar circumstances of the case, predicate a restitutive remedy.

The availability of the restitutive remedy stems in part from the difference in concept as to what constitutes a reasonable time in (a) cases where specific performance is sought and (b) cases where rescission is sought. In the former, (a), the rule, already discussed, holds that an offer, the duration of which is not specifically limited, endures for a reasonable time. The "reasonable time" element of this rule is in reality an ascertainment, from the circumstances, of what would be the understanding of a reasonable person in the position of the offeree as to the duration of the offer. See *Loring* v. *Boston,* 7 Met. 409, 414; Williston, Contracts (3d ed.) § 54; Restatement: Contracts, § 40 (2), esp. comment a; Corbin, Contracts, § 36, pp. 109–112. In the latter, (b), the rule has evolved in our decisions that where the sale of property is involved, "if the buyer intends to rely upon rescission he must return or offer to return the property within a reasonable time after he has gained knowledge of the facts which give him a right to rescind. *Bassett* v. *Brown,* 105 Mass. 551, 557." *McNulty* v. *Whitney,* 273 Mass. 494, 500. See Williston, Contracts (Rev. ed.) § 1526; Corbin, Contracts, § 1115, p. 515. Cf. Restatement: Contracts, § 349. The "reasonable time" element of this latter rule arises from considerations of fairness to the seller and is akin to the equitable defence of laches. Therefore, although the master's finding, referred to above, is of no significance with regard to the "reasonable time" element of the rule governing the duration of offers, it is conclusive with regard to the "reasonable time" element of the rule governing the right to rescission and restitution in the sale and purchase of property.

Nor can it be said that this restitutive remedy is in fact

the equivalent of specific performance which was specifically prayed for by Powers and which we have held is unavailable. For example, the remedy of specific performance, if available to Powers, would require on Powers's part only a tender of a deed to the premises. The remedy of rescission and restitution, however, requires as far as possible a full restoration of the status quo. See *Bellefeuille* v. *Medeiros,* 335 Mass. 262, 266. Such restoration here would require of Powers not merely a reconveyance of the property received but also the payment, or adjustments which would be the equivalent of payment, for the fair rental value of the premises during Powers's occupancy. See Restatement: Restitution, § 157, esp. comment d. Nor is this the only manner in which the restitutive remedy will differ from that of specific performance. We think, however, that the details of such restitutive relief can best be resolved by further hearing in the Superior Court and "[I]t seems impracticable at this time to state the applicable law more minutely." *Lang* v. *Giraudo,* 311 Mass. 132, 141. See Restatement: Restitution, §§ 156–159.

Our decisions do not preclude us from pursuing this course. Although the special prayer in the bill was for specific performance of a contract to repurchase, "the allegations of fact in the stating part of the bill, and not the special prayers, determine, upon a demurrer as well as upon appeal from a final decree granting relief, whether a case for relief is stated, for by our statute [G. L. c. 214, § 12] a prayer for general relief is in legal effect a part of every bill."[3] *Bleck* v. *East Boston Co.* 302 Mass. 127, 130, and cases cited. On the other hand, "it is well settled that no relief can be given under the general prayer for relief which is inconsistent with the specific relief prayed for in the bill." *Vallis* v. *Rimer,* 335 Mass. 528, 533, and cases cited. We think that, viewing the allegations of the bill as a whole, there is no fatal inconsistency between the specific relief prayed for (which we have denied) and the relief available on the theory of rescission which we propose to

---

[3] The bill before us sets out a general prayer for relief.

343 Mass. 695 695

grant. The special prayer is not predicated on the validity and subsistence of the original purchase and sale agreement (compare *Bleck* v. *East Boston Co.* 302 Mass. 127, 131). On the contrary, it presupposes a rescission of the original transaction.

Having in mind the foregoing considerations, we conclude that in the particular case the remedy of rescission and restitution is available procedurally, and that the facts alleged and found by the master state a case justifying such relief.

It follows that the decree must be reversed. The case is remanded to the Superior Court for further hearing on the issues presented by the remedy of rescission and restitution available to Powers. Pending further order of the court, Wayside is to be enjoined from transferring the note and mortgage held by it and from proceeding with the foreclosure.

*So ordered.*