JOSEPH DE ANGELIS, administrator, *vs.* CARMINE PALLADINO & another.

Suffolk.    April 3, 1945. — May 8, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Deed,* Consideration, Rescission.  *Contract,* Rescission.  *Evidence,* Extrinsic affecting writing.  *Executor and Administrator,* Real estate of decedent.

An administrator had no standing to maintain a suit in equity to avoid a conveyance of real estate by his intestate on the ground of failure of consideration.

It might properly be shown that there were considerations for a deed of real estate in addition to certain promises by the grantee to the grantor set forth as the "consideration of" the conveyance in a writing executed by the grantee contemporaneously with the delivery of the deed.

A mere failure by the grantee in a deed of real estate to perform for a period a promise, made to the grantor as one of the considerations for the deed, to pay to the grantor a certain sum weekly for life did not justify a decree for reconveyance of the property on the ground of failure of consideration where it appeared that there were other and substantial considerations for the deed consisting of a promise, fully performed by the grantee, to allow the grantor to occupy a part of the property rent free and of the grantee's cancelling an indebtedness of the grantor, assuming his obligations and paying money on his behalf.

BILL IN EQUITY, filed in the Superior Court on April 7, 1942,

The suit was heard by *Williams*, J., upon the reports of a master.

*M. E. Gallagher, Jr.*, (*A. J. Kirwan* with him,) for the plaintiff.

*J. Schneider*, for the defendant Palladino.

DOLAN, J.  By this bill the plaintiff, alleging that he is the administrator of the estate of Frank Repucha, deceased intestate, seeks to have the defendants Palladino and Michael E. Basile enjoined from conveying or in any way dealing with certain real estate formerly standing in the name of the intestate, an accounting of all moneys derived therefrom by them, and such further relief as the court may order. The case was referred to a master, who reported thereon, and comes before us on the plaintiff's appeal from the final decree entered by the judge for the payment of a certain sum of money by Palladino to the plaintiff, the plaintiff now contending that a decree should have been entered rescinding the contract under which the conveyance by the intestate to Palladino was made and ordering the reconveyance of the real estate by the defendants upon equitable terms.

At the outset we point out of our own motion (see *O'Donnell* v. *Commissioner of Corporations & Taxation*, 317 Mass. 664, 668) that, in so far as a reconveyance of the real estate is sought by the bill, the suit cannot be maintained by the plaintiff in his capacity as administrator of the estate of the intestate. See *Pevey* v. *McGrath*, 243 Mass. 451, 453, and cases cited; *Hooker* v. *Porter*, 271 Mass. 441, 446; *Nunes* v. *Rogers*, 307 Mass. 438, 441.  While the master has found that the plaintiff is one of the heirs at law of the intestate, any question of amendment to the bill in this respect need not be considered since, as will appear below, a case is not presented calling for a reconveyance.

Material facts found by the master may be summed up as follows: At some time prior to November 7, 1938, the intestate had been the owner of a frame dwelling consisting of three tenements of three rooms each. The property was subject to a coöperative bank mortgage on which $400 was unpaid and to unpaid real estate taxes of about $200. A

bill amounting to $150 for shingles used on the dwelling was also unpaid. The intestate had become feeble and unemployed. A neighbor, Mrs. Zupkofska, had been furnishing meals to him at her home and he became indebted to her for money advances, as security for which he conveyed the real estate in question to her. The defendant Palladino was a contractor under whose patronage the intestate had come to this country and for whom he had worked, at first steadily, later sporadically. Learning of the conveyance to Mrs. Zupkofska, Palladino, who had lent the intestate $700 in 1932 upon which interest amounting to $175 had accrued, advised the intestate to procure a reconveyance of the property. An attorney was employed, a bill in equity was brought for reconveyance, and a settlement was reached on November 4, 1938, by the terms of which Mrs. Zupkofska reconveyed the premises to the intestate upon the payment of $150 to her. Palladino furnished the funds for that payment, and also paid a fee of $75 to the attorney who represented the intestate. On the same day the intestate went to his attorney's office where an agreement was drawn in the following form: "I, Carmine Palladino, in consideration of having this day conveyed to me by Frank Repucha the premises situated at No. 18 Dacia Street, Roxbury, do hereby agree that said Frank Repucha is to have free of rent and any other expense the tenement [*sic*] located on the first floor of No. 18 Dacia Street; it is also agreed that I am to provide for and care for the said Frank Repucha during times of illness, sickness, or need and in addition thereto I am to pay to him the sum of Three Dollars and Fifty Cents (3.50) per week for the rest of his natural life." The attorney gave a copy of the agreement to the intestate, suggesting that he show it to an attorney or friend. The intestate was willing to convey the property to Palladino without any agreement in writing, stating that "they were like brothers, that he wanted . . . Palladino protected and that he wanted protection for himself as long as he lived." An appointment was made for the following Monday, November 7, and on that day the intestate executed and delivered to Palladino

a quitclaim deed of the premises, and the latter signed and acknowledged the agreement set forth above. Palladino paid the intestate $3.50 weekly and also furnished him with some articles of food until August 16, 1939, when the public welfare department began to make payments of $5 a week to the intestate. The payments were later made at the rate of $4 a week and continued until the death of the intestate on August 10, 1941. Palladino did not disclose to the welfare department that he was under an obligation to pay the intestate $3.50 weekly during his life. In the meantime (on January 12, 1939,) Palladino had conveyed the premises in question to his son-in-law, the defendant Basile, who paid no consideration therefor. The intestate carried an industrial insurance policy, and, being about to discontinue it, talked with Palladino and had the policy made payable to him. Palladino paid the weekly premium of fifty cents, and at the death of the intestate collected $325.35 from the insurance company, all of which he expended for the funeral expenses of the intestate. The master further found (paragraph 11) as follows: "I find that on taking over the real estate . . . Palladino paid sums of money, assumed obligations, and cancelled loans of the intestate in the following sums: Cancellation of loan $700. Accrued interest on same $175. Mortgage on property $400. Assumption of debt for shingling house $150. Unpaid taxes $200. Amount paid to Mrs. Zupkofska $150. Attorney's fee $75. [Total] $1,850. I find that . . . Palladino failed to carry out that term of the agreement which provided that he would pay $3.50 per week to the intestate, but that in August of 1939 when the intestate went on the welfare list of the city of Boston, he did so with the coöperation of Palladino, and that the latter ceased to make such weekly allowance to the intestate from August 16, 1939. If and in so far as it is material in this case I find that . . . Palladino is indebted to the estate of the intestate for the failure to pay this weekly allowance for the period August 16, 1939, to August 10, 1941, the date of the decease of the intestate, or for one hundred and one weeks at $3.50 per week amounting to $355.50 with inter-

est thereon to the date of filing this report amounting to
$46.22." The master filed a supplemental report after re-
committal in which he found as follows: "1. I find that
the sums of money paid, the obligations assumed, and the
loans cancelled which are set forth in detail in paragraph 11
of my original report were so paid, assumed and cancelled
as a part consideration for the conveyance of the property
which is the subject matter of the suit, and were in addi-
tion to the considerations set forth in the written agreement,
a copy of which is annexed to the bill of complaint. The
plaintiff urges as a matter of law, that in view of the terms
of the written agreement, such a finding may not be made,
and I have ruled otherwise. 2. I find that there was no
modification or cancellation of the terms of the agreement
entered into in August, 1939, by which the defendant, Pal-
ladino, was discharged from his obligation to pay to the
plaintiff's intestate the sum of $3.50 per week." The par-
ties entered into a stipulation, approved by the judge, to
the effect that certain facts may be added to the report of
the master as if originally made and included by him in his
report. Those agreed facts follow: "Frank Rupucha [*sic*]
occupied the first tenement in 18 Dacia Street the property
conveyed by him to Carmine Palladino from the time of
the conveyance by Frank Rupucha [*sic*] to the time of his
death; . . . he did not pay any rent to Carmine Palladino
for his occupancy of the first tenement in said property and
it was not contemplated by the agreement, attached to the
bill of complaint and marked exhibit 'A,' or anything else
that Repucha should pay any rent for occupying said tene-
ment."

Attached to the supplementary report is an objection of
the plaintiff to the finding that "sums of money paid, ob-
ligations assumed and the loans cancelled were so paid,
assumed and cancelled as a part consideration for the con-
veyance of the property which is the subject matter of
this suit, and were in addition to the considerations set
forth in the written agreement." It appears in the final
decree entered by the judge that the master's report had
been confirmed. That the exception thereto was over-

ruled is therefore implied. *Fuller* v. *Fuller,* 228 Mass. 441, 443.

The evidence is not included in the master's report, and it does not state or show on its face that his ultimate findings of fact are based solely on the subsidiary facts found by him. They may have been rested upon evidence that was before the master, which was not before the judge and is not before us. The judge and this court are therefore bound by the ultimate findings unless the subsidiary findings of fact are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon evidence that the master might have received. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435, and cases cited. We are of opinion that the subsidiary facts found by the master are not inconsistent with his ultimate findings.

We do not sustain the contention of the plaintiff that the master could not find properly any other considerations for the conveyance by the intestate to Palladino than those specifically set forth in the agreement in writing signed by Palladino. "It has repeatedly been held in this Commonwealth that the recital of a consideration in a deed does not preclude either party from showing an additional consideration." *Hill* v. *Whidden,* 158 Mass. 267, 274, and cases cited. And in the *Hill* case it was held that it was competent for the plaintiff to show that notes in suit were given as part consideration for a release in addition to considerations mentioned therein (page 274). See also *Way* v. *Greer,* 196 Mass. 237, 245–246; *Fay* v. *Corbett,* 233 Mass. 403, 410; *Brooks* v. *Bennett,* 277 Mass. 8, 17; *Finegan* v. *Prudential Ins. Co.* 300 Mass. 147, 153; Wigmore on Evidence (3d ed.) § 2433. That principle applies in the present case where the deed of conveyance is incorporated by reference in the written agreement in question. There was no error of law with respect to the findings of the master as to the actual considerations upon which the premises in question were conveyed.

The facts found would not support a conclusion that the plaintiff, even as an heir of the intestate, is entitled to a decree for reconveyance of the property. It is true that

the master found that Palladino, for a certain period prior to the death of the intestate, had failed to pay to him the $3.50 weekly agreed upon as one of the considerations for the conveyance, and that the judge merely decreed the payment by Palladino of the amount due to the intestate on account of the weekly payments together with interest and costs. In this there was no error. The right to rescind a contract on the ground of failure of consideration exists only where the failure of consideration amounts to an abrogation of the contract, or goes to the essence of it, or takes away its foundation. *Plumer* v. *Houghton & Dutton Co.* 281 Mass. 173, 175–176. In the present case the findings of the master would not justify a conclusion that the mere failure of Palladino to make the weekly payments, one of the considerations for the conveyance, amounted to an abrogation of the contract which had been fully performed as to other important considerations, or took away its foundation. The authorities relied upon by the plaintiff are not in conflict with what we have just said. Cases involving a substantial or total failure to perform an agreement for support are distinguishable from the present case.

*Final decree affirmed with costs of*
*this appeal to the defendants.*