CHOATE, HALL & STEWART *vs.* SCA SERVICES, INC.

Suffolk.   March 13, 1986. — July 18, 1986.

Present: KASS, KAPLAN, & FINE, JJ.

*Corporation*, Indemnification of officers and directors. *Contract*, Parties, Indemnity, Release from liability.

In a law partnership's action against a Delaware corporation, grounded upon an indemnification agreement providing that the corporation would pay the legal fees of certain of its former officers and directors "all to the maximum extent permissible under Delaware law," the judge correctly upheld indemnity under the "nonexclusion" provision of the Delaware General Corporation Law, Del. Code Ann. tit. 8, § 145 (f) (1983), rather than treating the agreement as supported only by § 145 (a), a subsection which, if applied to this claim, would have required "good faith" on the part of a former director to whom the partnership had rendered legal services. [526-528]

In a law partnerhip's action against a corporation, grounded upon an indemnification agreement providing that the corporation would pay legal fees of certain of its former officers and directors, the judge's findings, which, by and large, were not open to question on the record before this court, did not support the defendant's contentions either that, by his conduct, a certain director to whom the partnership had rendered legal services had forfeited his right to indemnity or that his misrepresentations to the corporation had undermined the indemnity agreement, at least as applied to him. [529-532]

In an action by a law partnership against a corporation, grounded upon an indemnification agreement providing that the corporation would pay the legal fees of certain of its former officers and directors, the partnership's claim was not barred by the fact that a certain former director to whom it had rendered legal services had already paid to it the fees in question, since the firm had represented that it would hold any recovery for that person's benefit, and he had undertaken to be bound by the result of the action. [532]

CIVIL ACTION commenced in the Superior Court on July 25, 1977.

After review by the Supreme Judicial Court, 378 Mass. 535 (1979), the case was heard by *James D. McDaniel, Jr.,* J.

*Mark W. Pearlstein* for the defendant.

*Mark A. Michelson (Alan M. Spiro* with him) for the plaintiff.

KAPLAN, J. The present appeal follows upon *Choate, Hall & Stewart* v. *SCA Services, Inc.*, 378 Mass. 535 (1979), to which the reader is referred. That was an action brought in 1977 by Choate, Hall & Stewart, a Boston law partnership (hereafter CHS), against the corporation (SCA) to recover fees for legal work done on behalf of Berton Steir. CHS billed SCA for these fees, claiming that SCA was directly obligated to CHS under the terms of a general settlement agreement between Steir and SCA (and others). By motion for summary judgment, SCA tested whether CHS, not a party to the agreement, had standing to sue upon it. The court, finally overthrowing the regime of *Mellen* v. *Whipple*, 1 Gray 317, 321 (1854), held that CHS, as an "intended," "creditor" beneficiary of SCA's undertaking in the agreement, did have a locus standi to maintain an action to enforce it. Left for trial were the substantive claim and defenses. In 1984 the action was tried, jury-waived, and upon findings of fact, rulings of law, and order for judgment, a judge of the Superior Court held for CHS. From the (amended) judgment which followed, SCA takes the present appeal. We note here that the record appendix contains very little of the trial transcript and accordingly the judge's findings by and large are not open to question.

1. *The agreement.* a. *Background.* Around March, 1976, SCA's eight-man board of directors found itself equally divided and in stalemate. A cause of doubt and contention was charges (and ramifications of charges) that Christopher P. Recklitis, past president and treasurer and once a dominant figure in the company, had defrauded it in the period 1972-1975 by the devices of taking for his personal use (or that of corporations controlled by him) moneys ostensibly advanced by SCA for legitimate purposes; causing SCA to purchase at excessive prices properties in fact, though not ostensibly, owned by him; and secretly and illicitly using funds of SCA for bribes and payoffs. To uncover the facts, SCA had commissioned investi-

gations by the law firms of Skadden, Arps, Slate, Meagher & Flom and Hale & Dorr, and by the date of the settlement agreement SCA and others had before them the reports of these firms as well as an audit report by the accounting firm of Arthur Young & Co. By that date, SCA had commenced separate actions against Recklitis, Stanton L. Kurzman, a director, and Steir, a past president and then currently chairman of the board of directors. The action against Steir, lodged in the Superior Court in Norfolk County in May, 1976, charged Steir with breach of his fiduciary duties toward SCA and with intentional waste of corporate funds in that (we omit details) he had assisted Recklitis in his schemes regarding the purchase of properties and the making of false loans. In their turn, Steir, Kurzman, and two other directors, Stanley Lesnick and Jack Kanfer, had commenced an action against SCA (and others) in a Delaware court and another in the United States District Court for the Southern District of New York. Meanwhile, the Securities and Exchange Commission (SEC) had undertaken an investigation of possible irregularities in SCA affairs (File No. HO-867).

   b. *Terms.* The settlement agreement of August 13, 1976, broke the deadlock and resolved certain confrontations. Parties of the first part were the Steir group; those of the second part were SCA and the four remaining directors.[1] By the terms of the agreement, the lawsuits mentioned, other than that against Recklitis, were dismissed with prejudice. There was to be an exchange of releases; the release running to the Steir group is summarized in the margin.[2] Steir and his three colleagues were

_____

   [1] Under § 141(f) of the Delaware General Corporation Law, Del. Code Ann. tit. 8, § 141(f) (1983), the individual directors, by executing the agreement, approved its execution by SCA with full effect as if the approval had been given by unanimous vote at a duly convened meeting of the board.

   [2] Steir and his colleagues were released by SCA (and others) from all causes of action which the releasors might have by reason of any act or omission of the releasees now known to the releasors or any of them or of which any of them or any officer of SCA had actual notice at any time prior to August 13, 1976, including but not limited to those acts or omissions referred to in the Skadden, Arps, or Hale & Dorr or Arthur Young reports, or which could have been asserted in the actions against Steir or Kurzman, or by way of counterclaim in the action by Steir and others in the Southern

to resign as directors and officers of SCA and its affiliates. They agreed to deliver to designated proxy agents their irrevocable proxies (suitably warranted) covering their shareholdings in the company. Steir contracted with SCA to provide future consulting services, and there were contracts also with Lesnick and Kanfer. A corporation named GCT, Inc., was to enter into an agreement to take over assets and liabilities of Garden City Travel Service, Inc., an SCA subsidiary.[3] SCA undertook to pay certain past legal and other expenses that had been incurred by the Steir group. The provision sued on in the present action by CHS against SCA appears as paragraph 15 of the settlement agreement as follows:

> "15. SCA shall continue to indemnify and hold harmless each of the parties of the first part for any and all losses, liabilities or expenses, if any . . ., suffered or incurred by such party arising out of or resulting from any acts or omissions to act by such party while a director, officer or employee of SCA or any of its subsidiaries prior to the effective date hereof and each of the parties of the first part may select his own counsel whose reasonable fees and out-of-pocket expenses will be paid on a current basis directly by SCA, all to the maximum extent permissible under Delaware law. SCA's current charter and by-law provisions with regard to indemnification will not hereafter be changed to terms which are in any respect less favorable to the parties of the first part. This obligation includes without limitation all legal and other fees and expenses incurred after the date hereof and arising from the Securities and Exchange Commission investigation of SCA, File No. HO-867."

District of New York. The release, however, was not to be effective with respect to any act or omission of any of the releasees of which no officer or director of SCA, except any one of the releasees, had actual notice prior to August 13, 1976; but to remain effective as to any releasee who did not himself have such actual notice.

[3] It is indicated in one of the briefs that this represented the repurchase of a business by one of the Steir group.

c. *Claimed breach of paragraph 15.* Putting to one side, for the moment, the significance of the reference in paragraph 15 to Delaware law, Steir is shown by the evidence to have incurred expenses fitting that paragraph, i.e., charges by CHS, his attorneys, arising from his acts or omissions while a director or officer of SCA prior to August 13, 1976, including chiefly such charges incurred after that date stemming from the SEC investigation. SCA paid CHS direct, without cavil, its bills through March, 1977, for services to Steir totaling $19,979.22, but it refused payment of later CHS bills. Here was the claimed breach by SCA of the settlement agreement, particularly paragraph 15, for which the present action was brought on July 25, 1977. The (amended) judgment in the action awarded CHS $22,796.21, which in substance covered bills for services from January, 1978, through November, 1981. The judgment declared, further, that payments of bills for services during the prior intervening period were properly exacted from SCA under a preliminary injunction obtained by CHS early in the action.[4] (Other details of the judgment need not be rehearsed.)

2. *Defenses.* SCA attempted to explain or justify its breach of contract in a number of ways. In our view, the trial judge correctly held that these defensive efforts failed.

a. *Authority for indemnification of directors.* SCA has contended that paragraph 15, obliging it to indemnify Steir for his legal expenses, was invalid by Delaware law which, the parties agree, controls on this question.[5] The reference is to § 145 of the Delaware General Corporation Law, Del. Code Ann. tit. 8, § 145 (1983), set out, in part, as an appendix to this opinion. SCA argues, in effect, that the only proper source for paragraph 15 was subsection (a) of § 145, and for lack of "good faith,"

---

[4] Payments under the injunction totaled $34,526.31. CHS sought a judgment herein awarding an additional $41,247.97, but this included $18,451.76 for services on Steir's behalf in the present action against SCA. This element the judge denied, leaving the award of $22,796.21, as indicated. CHS has not cross appealed from the denial.

[5] SCA is a Delaware corporation.

As explained on the prior appeal, 378 Mass. at 540-542, it was Massachusetts, not Delaware, law that controlled on the question of the right of CHS to sue as third-party beneficiary.

etc., Steir did not qualify — a possiblity that SCA presumably overlooked when it entered into the settlement agreement and made the first payments to CHS. Passing the question of the availability of subsection (a), we agree with the trial judge that subsection (f) was available. This is the "nonexclusion" provision which says that there may be an agreement to indemnify for legal expenses which is not founded in, or limited by, the other provisions of the statute. A similar "nonexclusion" provision appeared in a predecessor statute, Delaware Corporation Law § 2(10) (1943) (hereinafter "§ 2[10]"), 44 Del. Laws c. 125, § 1 (1943) (codified at Del. Code Ann. tit. 8, § 122[10] [1953]) (repealed 1967).[6] It was interpreted by the Third Circuit Court of Appeals in *Mooney* v. *Willys-Overland Motors, Inc.,* 204 F.2d 888 (1953). According to the court (per Biggs, C.J.), the provision was invoked by an agreement between the corporate officer and the corporation on sundry solid considerations of which the indemnification of the officer formed an understandable part — not one dragged in arbitrarily.[7] See also

---

[6] 44 Del. Laws c. 125, § 1 (1943), added subsection (10) to c. 65, § 2, of the 1935 Del. Rev. Code.

Section 2, as so amended, read in relevant part as follows:

"Every corporation created under the provisions of this chapter shall have power to —

. . . .

(10) Indemnify any and all of its directors or officers or former directors or officers or any person who may have served at its request as a director or officer of another corporation in which it owns shares of capital stock or of which it is a creditor against expenses actually and necessarily incurred by them in connection with the defense of any action, suit or proceeding in which they, or any of them, are made parties, or a party, by reason of being or having been directors or officers or a director or officer of the corporation, or of such other corporation, except in relation to matters as to which any such director or officer or former director or officer or person shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty. *Such indemnification shall not be deemed exclusive of any other rights to which those indemnified may be entitled, under any by-law, agreement, vote of stockholders, or otherwise.*" (Emphasis added.)

[7] Indemnification of Mooney's legal expenses was part of an over-all agreement of settlement between Mooney and the Willys Company, of which he was president and director. The contract also terminated Mooney's

Bishop, Corporate Officers and Directors par. 6.03 [1][b] & 7.06 (1981). The present statute, Del. Code Ann. tit. 8, § 145(f) (1983), has the same intent and similar coverage. See *Hibbert* v. *Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del. 1983) (by-law provision); *Merritt-Chapman & Scott Corp.* v. *Wolfson*, 321 A.2d 138, 142 (Del. Super. Ct. 1974) (same). See also E.L. Folk, III, The Delaware General Corporation Law 101-103 (1972); Arsht & Stapleton, Delaware's New General Corporation Law: Substantive Changes, 23 Bus. Law. 75, 80 (1967); Sebring, Recent Legislative Changes in the Law of Indemnification of Directors, Officers and Others, 23 Bus. Law. 95, 105 (1967). Our case fits § 145(f).[8]

---

employment, called for his resignation of corporate offices, settled his various differences with the company, arranged for the company's purchase of his Toledo home and payment of his moving expenses to New York, and so on. In reference to the "nonexclusion" provision of § 2(10), the court wrote (204 F.2d at 896):

"We do not think that public policy requires that the Delaware statute be construed as controlling every conceivable situation which in one aspect may be called indemnification for litigation expenses, any more than the policy of ultra vires should be applied to invalidate those other payments under the contract which, except for the contract, would be gifts. Where there exists, as there does here, an independent ground for the payment of litigation expenses, we see no reason to make an overriding reference to the statute. The final sentence of the statute states: 'Such [statutory] indemnification shall not be deemed exclusive of any other rights to which those indemnified may be entitled, under any by-law, agreement, vote of stockholders, or otherwise.' And Willys' By-Law XXIII closes with the remark: 'The foregoing right of indemnification shall not be exclusive of other rights to which any director or officer may be entitled as a matter of law.' We think that Mooney's contract right to his counsel fees as part of a termination agreement is within the contemplation of these provisions. We have found nothing in the legislative history of the Delaware statute to indicate otherwise.

"We see no danger here of encouraging non-meritorious claims for indemnification outside the by-law and the statute. An independent legal ground for such claims must be shown in every case."

Alternatively, the court upheld the indemnification under the terms of § 2(10) preceding the "nonexclusion" provision. *Id.*

[8] For decisions touching other aspects of § 145 or its predecessor, see *Essential Enterprises Corp.* v. *Automatic Steel Products, Inc.*, 39 Del. Ch. 371, 375-379 (1960); *Essential Enterprises Corp.* v. *Dorsey Corp.*, 40 Del. Ch. 343, 349-353, 356-357 (1962); *Merritt-Chapman & Scott Corp.* v. *Wolfson*, 264 A.2d 358 (Del. Super. Ct. 1970); *Green* v. *Westcap Corp.*,

b. *Alleged forfeiture of rights of indemnity.* However, agreements — even compendious settlement agreements — under which directors secure indemnification from the corporations they have served carry a potential for mischief and for harm to stockholders and others. (The considerations of policy are well stated in the introductory comment on subchapter E, Indemnification, 2 Model Business Corporation Act Annotated 1081-1082 [3d ed. 1985].) Accordingly, it is generally accepted that an agreement to indemnify within § 145(f), to survive into enforceability, must be able to withstand an attack on grounds of policy or basic equity, that is, a defense amounting to illegality, as in Mass.R.Civ.P.8(c), 365 Mass. 750 (1974) (affirmative defenses). See Bishop, *supra* at par. 6.03 [1]; Arsht & Stapleton, *supra*; Sebring, *supra.*

In its brief, SCA makes various dark insinuations about Steir especially in respect to his supposed relationship with Recklitis, which should, they aver, deprive him of indemnity. We cannot, however, go by suspicion, we must go by the record put before us, and, as already noted, that leads us to the judge's findings. These do not denigrate Steir's conduct as director and officer of SCA.

(1) Project "A". With respect to the claim that Steir had a knowing hand in SCA's purchase of properties at excessive prices, more particularly certain properties in Amesbury, Massachusetts, there were detailed findings, ending in a ruling that "SCA failed to prove that it suffered any actual loss in the Project A transaction, that it paid anything other than a fair market price, or that Steir acted to SCA's detriment" (ruling 11).[9]

(2) Carlton receivable. Under this caption we may refer to the question of alleged complicity of Steir in improper loans

---

492 A.2d 260 (Del. Super. Ct. 1985); *Galdi* v. *Berg*, 359 F. Supp. 698 (D. Del. 1973). See also *Tillman* v. *Wheaton-Haven Recreation Assn.*, 580 F.2d 1222, 1227-1229 (4th Cir. 1978), construing a similar Maryland statute.

[9] The Norfolk action, raising this matter, was dismissed with prejudice under the terms of the settlement agreement. See also the release summarized at note 2, *supra.*

to Recklitis or his companies (including Carlton Hotel Corporation). "There was no evidence adduced at trial," says finding 42, "that Steir knew . . . at the time the cash advances were being made that they were being made improperly nor was there any evidence of any wrongdoing or breach of fiduciary duty on Steir's part with regard to the Carlton receivable." [10] Similarly, " [t]here was no proof of a breach of duty or harm to SCA with regard to Steir's guarantee of certain of Recklitis' debts . . ." (ruling 11). [11]

(3) *Steir's guilty plea.* In 1979 an information was filed against Steir in the Federal District Court in Massachusetts charging that in 1974 he had knowingly caused to be filed with the SEC an amendment to the company's statement for a prior fiscal year in which the Carlton receivable was described as being for services purchased, whereas Steir knew that it resulted primarily from cash advances to Recklitis and Carlton. [12] Steir pleaded guilty. As part of the negotiated plea bargain, [13] the government agreed it would not bring further charges against Steir "arising directly or indirectly out of the continuing SEC investigation into SCA" (finding 42). The judge evidently considered the conviction less than grievous, as he indicated in ruling 12 that, were Steir's indemnification pursuant to § 145(a) of the Delaware statute, the guilty plea would not be disqualifying under that text. (CHS did not represent Steir in the criminal proceeding and no claim for legal services in that connection is at bar.)

(4) *SEC civil suit.* SEC commenced a civil action in August, 1977, for injunctive and other relief against SCA, Recklitis, Steir, and others in the Federal court for the District of Columbia alleging wrongdoing regarding the matters mentioned in (1) and (2) above. The record herein reproduces the complaint.

---

[10] Note 9 applies here as well.

[11] The record suggests that there was a question about a certain payment of $125,000 by Recklitis to Steir. It appears that Steir subsequently paid an equivalent sum to SCA.

[12] Compare the quotation from the judge's finding in the text before note 9.

[13] Steir was sentenced to a year's imprisonment, sentence suspended, probation for a year, with fine of $5,000.

The allegations are not themselves proof, and the judge's findings in the present action relating to the subjects of those allegations have been noted.

(5) *Conclusion.* The judge concluded in finding 46: "SCA produced no evidence that Steir breached his fiduciary duty to SCA and improperly benefited at SCA's expense in the sum of $125,000 [see note 11, *supra*] or any other sum. There was no evidence adduced at trial that Steir intentionally or wilfully violated any fiduciary duty owed to SCA, material to this case, or aided or abetted in any wrongdoing to the detriment of SCA and to his own benefit or that of those with whom he acted in concert." (See also ruling 11.) In ruling 10, the judge denied that "bad faith" on Steir's part had been shown that might deprive him of his § 145(f) rights.[14]

c. *Attack on the settlement agreement.* The judge found no merit in SCA's contention that Steir made misrepresentations to, or concealed information from, the parties of the second part with the result, according to SCA's claim, that the settlement agreement was undermined at least as far as Steir was concerned. (Although, if accepted, this might look to rescission, there was little indication how the status quo ante could be achieved.) The judge's rejection of the argument was flat (finding 45): "SCA produced no evidence at trial that establishes or tend[s] to show any misrepresentation to it or concealment from it of any material fact in connection with the execution or negotiations of the agreement in 1976." He added (finding 44) that SCA had "extensive knowledge" from the several reports and otherwise of the matters alleged by the

---

[14] Each of CHS's bills to Steir was accompanied by a form letter from Steir in which he requested payment to CHS under paragraph 15 of the settlement agreement and undertook to repay the amount to SCA if it should be ultimately determined that he was not entitled to the payment for his account pursuant to § 145(a)-(c). The form letter was probably suggested by § 145(e), which provides for current payment of legal expenses ("in advance of the final disposition of such action"). We agree with the judge that the reference to (a)-(c) did not impeach the right to rely on (f) as authority for the indemnification. (Of course, it has not been ultimately determined that Steir was not entitled, etc.; on the contrary, we are now determining (see the text of [e]) that he is entitled to be indemnified by the corporation "as authorized in this section.")

SEC against Steir or should have anticipated their development in the course of the SEC investigation. He thought it was the parties' intention "to put at rest all litigation past and future in connection with the matters alleged (but not proved) in the SEC complaint." *Id.* (See also ruling 13.)

3. *A procedural point.* As SCA refused to pay the amount now in suit to CHS, Steir paid it. This, according to SCA, should bar the present action since CHS is left without a grievance. CHS, however, has represented that it will hold the recovery herein for the benefit of Steir, and Steir has undertaken to be bound by the result of the present action. To make SCA's own default the occasion for destroying the action would be indeed stultifying. We may observe that, when it was originally held in Superior Court that CHS was disqualified as plaintiff under *Mellen* v. *Whipple*, and CHS, therefore, moved to substitute Steir as plaintiff, SCA did not acquiesce in the motion and it was denied (see 378 Mass. at 540). At no stage through trial did SCA attempt by pleading or motion to take its present objection.[15] The objection is without merit, as the judge held.

*Judgment affirmed.*

APPENDIX.

§ 145. *"Idemnification of officers, directors, employees and agents; insurance.*

(a) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or

---

[15] In this connection, compare Mass.R.Civ.P. 25(c) and 17(a), 365 Mass. 771 and 763 (1974) (transfer of interest; real party in interest).

not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(b) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the corporation unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity f 'r such expenses which the Court of Chancery or such other court shall deem proper.

(c) To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or othewise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

[(d) omitted.]

(e) Expenses incurred by an officer or director in defending a civil or criminal action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding as authorized by the board of directors in the specific case upon receipt of an undertaking by or on behalf of such director or officer to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the corporation as authorized in this section. Such expenses incurred by other

employees and agents may be so paid upon terms and conditions, if any, as the board of directors deems appropriate.

(f) The indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

[(g) - (i) omitted.]"