**P.L.A.Y., INC., Plaintiff,**

v.

**NIKE, INC., Defendant.**

**Civil Action No.97-30055-MAP.**

United States District Court,
D. Massachusetts.

March 24, 1998.

---

Samuel L. Rodriguez, Catala & Mervis, P.C., Boston, MA, for Plaintiff.

John A. Cvejanovich, O'Connell, Flaherty & Attmore, Springfield, MA, Michael D. O'Connell, O'Connell, Flaherty & Attmore, Hartford, CT, for Defendant.

PONSOR, District Judge.

Upon *de novo* review, this Report and Recommendation is hereby adopted and that portion of Ct. I seeking rescission is hereby dismissed. The settlement agreement is a substituted contract as a matter of law; Ct. I fails to state a claim for rescission. Docket No. 7 is therefore ALLOWED.

So Ordered.

NEIMAN, United States Magistrate Judge.

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant NIKE, Inc. ("NIKE") has moved to dismiss a portion of one count of Plaintiff P.L.A.Y., Inc. ("PLAY")'s five count complaint. The motion has been referred to this Court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that the motion to dismiss be allowed.

## I. FACTUAL BACKGROUND

The following facts are plead in the complaint. PLAY is a non-profit corporation that was formed in Massachusetts in 1989 by Dennis Jackson ("Jackson") to address the problems and increase the potential of student athletes. The name "PLAY" is an acronym for "Planned Learning Achievement for Youth." NIKE is a multi-national sports conglomerate with its central office in Oregon. In March of 1994, NIKE, with basketball star Michael Jordan as its chief spokesperson, launched an advertising campaign utilizing the service mark "P.L.A.Y.," an acronym for "Participate in the Lives of America's Youth." PLAY, the organization, immediately claimed that NIKE's "P.L.A.Y." campaign was violative of the Lanham Act and that use of the acronym constituted both an infringement of trade name and unfair and deceptive trade practices.

NIKE and PLAY engaged in negotiations and, on December 29, 1994, entered into a "Settlement Agreement and Release of Claims" ("Agreement"). PLAY agreed to release any potential claim it had against NIKE in exchange for NIKE's promise to provide financial and other assistance to PLAY. Specifically, NIKE agreed to make certain annual donations to PLAY over a three year period in the amounts of $40,000 (1995), $65,000 (1996) and $40,000 (1997). NIKE also agreed to match other donations received by PLAY in both 1995 and 1997, up to a maximum of $25,000 each year, and agreed to retain Jackson as a consultant for three years at an annual fee of $10,000. Further, NIKE agreed to provide certain sports equipment to PLAY, up to a value of $13,500 per year, and to contribute scholarship monies of $20,000 per year to fund attendance at PLAY's summer camp. NIKE was also to donate $10,000 per year to fund speakers at the camp. In addition, NIKE agreed to pay PLAY's attorneys' fees of $55,000.

NIKE also promised non-financial support, namely, "to take specific steps to make the public aware of PLAY's programs, to enhance PLAY's reputation as a charitable foundation and to expand PLAY's base of support." Along these lines, NIKE promised, among other things, to generate media coverage for PLAY's programs, distribute a video regarding PLAY's activities and develop brochures and a media press kit. NIKE also promised to introduce Jackson to professional athletes and coaches who might be able to assist PLAY in soliciting donations from various charitable organizations. These non-financial contributions, according to the Agreement, had an approximate value of $80,000.

In exchange for these promises by NIKE, PLAY agreed to release all its claims. PLAY also agreed to allow NIKE to use, without objection, the name "P.L.A.Y." as the title of its youth sports and fitness initiative.

## II. PROCEDURAL BACKGROUND

On March 27, 1997—over two years after the December 29, 1994 Agreement was executed—PLAY filed this action. The complaint sounds in five counts: breach of contract (Count I); trademark infringement (Count II); false designation of origin under the Lanham Act (Count III); common law infringement of trade name and service mark and unfair competition (Count IV); and unfair and deceptive trade practices (Count V). NIKE seeks to dismiss that part of Count I which calls for rescission of the Agreement.

NIKE does not seek to dismiss, at least at this juncture, either the breach of contract claim for monetary damages in Count I or Counts II through V.

### III. STANDARD OF REVIEW

■ When faced with a Rule 12(b)(6) motion to dismiss, a court accepts as true the factual allegations contained in the complaint and draws all reasonable inferences in favor of the plaintiff. *Kiely v. Raytheon Co.,* 105 F.3d 734, 735 (1st Cir.1997). Dismissal is appropriate "only if it is clear that no relief could be granted, under any theory, 'under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). *Accord Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994). A court, however, "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). *See also Coyne v. City of Somerville,* 972 F.2d 440, 444 (1st Cir.1992).

### IV. FRAMING THE ISSUE

In its motion to dismiss, NIKE proceeds on the assumption that the Agreement is a contract. As such, NIKE claims, PLAY fails to allege facts in Count I which constitute grounds for rescission of the contract. In particular, NIKE asserts that Count I does *not* allege that PLAY was fraudulently induced to enter into the Agreement, that the parties were acting under a mistake of fact when they entered into the Agreement, or that the "essence" or "foundation" of the Agreement was destroyed or rendered obsolete by NIKE's subsequent actions. NIKE also contends that Count I fails to allege another essential element of rescission—that PLAY restored, or even offered to restore, the financial benefits already received pursuant to the Agreement. Finally, NIKE asserts that PLAY's prayer for rescission should be dismissed due to its failure to bring the claim within a reasonable time.

In response, PLAY asserts that the Agreement is actually an executory accord for which the remedy of rescission is available.

In essence, PLAY argues, its prior claims against NIKE are not extinguished until NIKE fully performs all of its obligations under the Agreement.

Distilled to its purest form, the issue before the Court is whether the parties' Agreement is a "substituted contract," as NIKE contends, or an "executory accord," as PLAY maintains, the resolution of which determines whether the remedy of rescission is available. Both parties invite the Court to answer the question, although PLAY, as is appropriate, puts a somewhat different spin on the issue. PLAY maintains that the actual question before the Court is whether the complaint pleads sufficient facts for the Agreement to be considered an executory accord and thereby subject to the remedy of rescission. However framed, the question requires the Court to first determine the character of the Agreement. Once that question is resolved, the Court can determine whether Count I of the complaint adequately alleges facts which constitute grounds for its rescission.

### V. DISCUSSION

■ Where the terms of a settlement agreement are plain and unambiguous, as here, the question of whether it was intended to be a "substituted contract" or an "executory accord" can be decided by a court as a matter of law. *Tuttle v. Metz Co.,* 229 Mass. 272, 118 N.E. 291 (1918). *See also Lipson v. Adelson,* 17 Mass.App.Ct. 90, 456 N.E.2d 470, 471 (1983); *Poskus v. Braemoor Nursing Home, Inc.,* 6 Mass.App.Ct. 896, 377 N.E.2d 705, 706 (1978). Although the parties are diverse, there is no dispute that Massachusetts law applies to this case.

■ Under Massachusetts law, an executory accord is a "contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing dut[ies]." *Restatement (Second) of Contracts,* § 281. A violation of the accord enables a party to "enforce ... the original duty or any duty under the accord." *Id.* at § 281(2). In essence, the prior claim is not extinguished until full performance of the accord. In contrast, "a substituted contract is a contract that is itself accepted by the

obligee in satisfaction of the obligor's existing duty." *Restatement (Second) of Contracts,* § 279. Unlike an executory accord, "[t]he substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty." *Id.* See also *Lipson,* 456 N.E.2d at 471; *McFaden v. Nordblom,* 307 Mass. 574, 30 N.E.2d 852, 853 (1941).

When parties resolve disputed claims they frequently refer to the agreement as a "compromise and settlement." *Corbin on Contracts,* § 1278. *See Dunbar v. Dunbar,* 180 Mass. 170, 62 N.E. 248, 248–49 (1901). "When so described, the agreement, even though executory, is usually intended to operate as a substituted contract and an immediate discharge of the prior claims so compromised. After such a discharge, no action is maintainable on the previous claims, whether for an alleged breach of contract or otherwise. Rather, the rights of the parties are now determined by the substituted contract—the 'compromise and settlement'". *Corbin on Contracts,* § 1293 n. 1 (citing *Eastern Steel Products Corp. v. Chestnutt,* 252 N.C. 269, 113 S.E.2d 587 (1960)). Massachusetts courts often find that an agreement is a substituted contract where it reflects, either expressly or by clear implication, an intention that it serve as an immediate satisfaction and discharge of existing claims. *See Lipson,* 456 N.E.2d at 471; *Banionis,* 193 N.E. at 731; *Poskus,* 377 N.E.2d at 706. However, a court may find that an agreement is an executory accord when the original claim was for payment of a liquidated amount and the debt was matured and undisputed. *Banionis v. Lake,* 289 Mass. 146, 193 N.E. 731 (1935). *See Restatement (Second) of Contracts,* § 279 cmt. c.

### A.

■ The only possible conclusion that the Court can draw in the case at bar is that the parties intended the Agreement to be a substituted contract. That intent is unambiguous from the four corners of the document. *Compare Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 896–97 (2d Cir.1976) (in view of ambiguous contractual intent, dis-

missal of complaint was premature). For one, the express language of section 10 of the Agreement demonstrates that PLAY and NIKE intended that the Agreement act as a present and immediate discharge of all possible claims. The pertinent language of section 10 reads as follows:

> P.L.A.Y., for itself and its officers and directors, does hereby release, acquit and forever discharge NIKE and its officers, directors, agents, employees, successors and assigns from any claims, demands, damages, liabilities and causes of action of any kind or nature whatsoever, known or unknown, including but not limited to any claims, demands, damages, liabilities and causes of action resulting from or in any way connected with or arising from NIKE's use of the word "Play" . . . .

(Pl.'s Ex. 21 at § 10.) Section 13 of the Agreement sets forth the parties' further acknowledgment "that this compromise and settlement represents a compromise of disputed claims and nothing contained herein shall be construed as an admission of any legal liability on the part of either party." (Id. at § 13.)

There is nothing in the Agreement to suggest any reason for a delayed application of the discharge of NIKE's liability or that the discharge was conditional upon the occurrence of a future event. Rather, the explicitly stated purpose of the Agreement is "the complete and final settlement of all claims, demands, rights and causes of action." Even the title of the Agreement, "Settlement Agreement and Release of Claims," suggests this purpose.

Finally, the Agreement, contains bilateral promises and obligations, as would a substituted contract. Not only did NIKE agree to multiple performance obligations, but unlike a unilaterally-based executory accord, PLAY agreed to designate a NIKE representative to its Board of Directors and committed to not using any other shoe or apparel manufacturer in connection with its programs. In addition, Jackson agreed to perform certain consulting services for NIKE and the parties covenanted to mutually tolerate each others' use of the acronym "PLAY."

PLAY's arguments to the contrary, there are no genuine and material facts in issue with respect to the Agreement. Simply put, the Agreement reflects the parties' intention to immediately discharge all prior claims. It is properly characterized as a substituted contract.

### B.

▮ Viewing the Agreement as a substituted contract, it is evident that PLAY has failed to state a claim upon which the relief of rescission may be granted. Under Massachusetts law, to sustain a claim for rescission of a contract, the party seeking rescission bears the burden of pleading factual circumstances which merit such relief. *See Coggins v. New England Patriots Football Club, Inc.,* 397 Mass. 525, 492 N.E.2d 1112, 1119–20 (1986); *Klein v. Commonwealth,* 318 Mass. 592, 63 N.E.2d 360, 361 (1945). A court, in the exercise of its equitable discretion, typically rescinds an agreement only upon a showing of fraud, accident, mistake or some type of grossly inequitable conduct which renders the contract void *ab initio*. *See Elias Bros. Restaurants, Inc. v. Acorn Enterprises,* 831 F.Supp. 920, 927 (D.Mass. 1993); *Kannavos v. Annino,* 356 Mass. 42, 247 N.E.2d 708, 712–13 (1969); *Vincent v. Torrey,* 11 Mass.App.Ct. 463, 417 N.E.2d 41, 43 (1981); *Covich v. Chambers,* 8 Mass.App. Ct. 740, 397 N.E.2d 1115, 1121 (1979).

▮ An action for rescission can be predicated on an allegation that the defendant fraudulently misrepresented facts to induce the plaintiff to enter into an agreement. *McGrath v. C.T. Sherer Co.,* 291 Mass. 35, 195 N.E. 913, 925 (1935). *See also Elias Bros.,* 831 F.Supp. at 927. The misrepresen-

tation must relate to facts in existence at the time of contract formation; promises of future performance which are later breached cannot form the basis for a rescission action. *See Lolos v. Berlin,* 338 Mass. 10, 153 N.E.2d 636, 639 (1958); *Barry v. Frankini,* 287 Mass. 196, 191 N.E. 651, 653 (1934); *Choate, Hall & Stewart v. SCA Services, Inc.,* 22 Mass.App.Ct. 522, 495 N.E.2d 562, 567 (1986). In addition, the party seeking rescission must demonstrate that the alleged misrepresentation and resulting failure of consideration "amounts to an abrogation of the contract, or goes to the essence of it, or takes away its foundation." *Plumer v. Houghton & Dutton Co.,* 281 Mass. 173, 183 N.E. 266, 267 (1932) (internal quotations and citations omitted). It follows that rescission is not available where the contract has been substantially performed. *De Angelis v. Palladino,* 318 Mass. 251, 61 N.E.2d 117, 120 (1945); *Barry,* 191 N.E. at 653; *Solomon v. Birger,* 19 Mass.App.Ct. 634, 477 N.E.2d 137, 141 (1985).[1]

▮ Based on these principles, it is the Court's opinion that Count I does not state a legally sufficient claim for rescission. First, the allegations in the complaint do not implicate conduct which occurred during the formation of the Agreement. Rather, the complaint challenges the manner in which NIKE performed (or failed to perform) the Agreement. For example, the complaint alleges that the Agreement was breached when NIKE failed to provide advertising and public relations support in connection with the marketing of PLAY's youth programs. This may well support the claim for damages in Count I for violation of the Agreement, but it does not support the claim for rescission.[2]

---

1. NIKE also asserts that it has performed a substantial portion of the Agreement. According to NIKE's calculations, its performance to date has amounted to $367,000 and it is only left with providing the $80,000 worth of "non-financial" support, $23,500 in product and $20,000 in scholarship funds for the 1997 camp. Thus, NIKE claims, the disputed portion of the Agreement represents only sixteen percent of the total value of the contract. In addition, NIKE characterizes its alleged failure to introduce Jackson to sports celebrities, seat him at a prominent place at a banquet and leave him tickets to a "Hoop Summit" as "[m]inor personal affronts" hardly worthy of calculation. PLAY disputes both

NIKE's calculations and its characterization of the breach. The extent to which NIKE has performed has not been considered by the Court in making its recommendation.

2. The fact that PLAY seeks inconsistent remedies is of no moment. "Especially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent pleading." *Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 20 (1st Cir.1997) (citing *Gens v. Resolution Trust Corp.,* 112 F.3d 569, 573 (1st Cir. 1997)).

Second, the allegations in Count I do not suggest that PLAY was fraudulently induced into signing the Agreement or that the parties were operating under a mistake of fact. Nor does Count I allege a destruction of the "essence" or "foundation" of the Agreement. Such deficiencies are precisely the type that have prompted other courts to dismiss claims for rescission. *See, e.g., HCFA Assocs. Corp. v. Grosman*, 960 F.Supp. 581, 586 (E.D.N.Y. 1997). Simply put, given the character of the Agreement and the facts alleged, Count I fails to state a legally sufficient claim for rescission. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

### C.

The Court briefly addresses several alternative arguments which NIKE advances, but finds them unpersuasive for purposes of dismissal.

#### 1. *PLAY's Purported Failure to Allege Restoration of Funds*

NIKE asserts that Count I, insofar as it seeks rescission, should be dismissed because it fails to allege that PLAY has restored, or offered to restore, the financial benefits it has already received pursuant to the Agreement. PLAY does not counter NIKE's argument head on, preferring to put all of its eggs in its executory accord basket. Thus, PLAY simply reiterates its argument that the Agreement is an executory accord and not subject to the restoration of funds in order to proceed.

 NIKE's position carries greater weight. The Massachusetts Supreme Judicial Court has often recognized that restoration of a benefit is a condition precedent to maintaining a rescission action. *See Raymond Syndicate, Inc. v. American Radio & Research Corp.*, 263 Mass. 147, 160 N.E. 821, 825 (1928). *See also Bellefeuille v. Medeiros*, 335 Mass. 262, 139 N.E.2d 413, 415 (1957) (a plaintiff seeking rescission must "restore or offer to restore all that he received under

[the contract]"); *O'Conner v. Hurley*, 147 Mass. 145, 16 N.E. 764 (1888). Accordingly, an allegation that a plaintiff offered to return the consideration *should* be included in a complaint for rescission. *See Massachusetts Practice*, § 12.81 (1996) (citing 12A C.J.S. Cancellation of Instruments § 55).

In the Court's opinion, however, NIKE overemphasizes PLAY's need to *plead* restoration. Although the cases seem to indicate that, absent exceptional circumstances, a plaintiff has to *prove* restoration in order to receive rescission, only *Massachusetts Practice* suggests that restoration should be affirmatively *pled.* In contrast, the Federal Rules of Civil Procedure appear to allow much less. *See* Fed.R.Civ.P. 8(a) (pleadings shall contain only "a short and plain statement of the claim showing that the pleader is entitled to relief, and . . . a demand for judgment for the relief the pleader seeks"). Therefore, while the Court finds that benefit restoration is a condition precedent to rescission, it is unpersuaded that PLAY had to absolutely allege that precondition in its complaint.

#### 2. *PLAY's Purported Failure to Allege Rescission Within a Reasonable Time*

NIKE also contends, as a matter of law, that PLAY has not brought its claim for rescission within a reasonable time. Although determination of what is a reasonable time in which a party must act is ordinarily a question of fact, where the facts are not in dispute it can be determined as a matter of law. *Powers, Inc. v. Wayside, Inc. of Falmouth*, 343 Mass. 686, 180 N.E.2d 677, 680 (1962). *See also Elias Bros.*, 831 F.Supp. at 927–28 (holding as a matter of law that, in reaping benefits from disputed franchise agreement for three years, defendants "have not come close to exercising 'reasonable promptness' in asserting their claim for rescission").

PLAY received money and services pursuant to the Agreement for several years prior to filing this complaint on March 27, 1997, and therein seeking rescission. PLAY asserts, however, that NIKE was in violation of the Agreement as early as March of 1995.

Accordingly, it appears, at least at first blush, that PLAY has been lax in asserting any rescission rights it might have. Nonetheless, the Court hesitates to make that determination at such an early stage of these proceedings, particularly where there has yet to be any formal discovery. Moreover, as explained, the Court believes that there are other reasons why PLAY's rescission claim should be dismissed.

## VI. *CONCLUSION*

For the foregoing reasons, the Court recommends that NIKE's motion to dismiss that portion of Count I which seeks rescission should be ALLOWED.[3]

October 21, 1997.

---

**3.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.